## SCHAFFNER *v.* BENSON.

[No. 13,229.   Filed June 27, 1929.   Rehearing denied September 14, 1929. · Transfer denied December 5, 1929.]

*T. Morton McDonald,* for appellant.
*Luther Benson,* for appellee.

REMY, J.—Suit by appellee against appellant and others to cancel an oil and gas well lease, and to have

appellee adjudged the owner of certain oil well casing used by appellant in the completion of a certain well. The cause having been put at issue by denial, the court found the facts specially and stated its conclusions of law thereon in favor of appellee, for whom judgment was rendered.

Exceptions to the conclusions of law and to the action of the court in overruling motion for new trial present the only questions for review.

We shall set forth, in substance, the facts found which are material to a determination of the questions presented.

On December 13, 1918, appellee, being the owner of certain real estate, leased the same for a valuable consideration to William P. Hurst, granting to him the right to enter upon the land and drill for oil and gas, it being agreed that, if a well was not completed within 18 months from date of lease, lessee was to pay to lessor the sum of 25 cents per acre annually until a well should be completed. The lease was for a term of five years and as long thereafter as oil and gas should be found in paying quantities, lessee to have "the right at any time to remove a part or all of the property, machinery or fixtures placed thereon by lessee." By successive assignments, the lease was transferred to Foster & Adams Gas and Oil Association, hereinafter designated as "Foster & Adams," which association entered into a contract with Schaffner Brothers, a copartnership, by the terms of which they were to drill a well on the leased premises. In compliance with the contract, a well was drilled to the depth of 2,357 feet, and was properly encased with oil-well casing. Neither oil nor gas was found in paying quantities, and, in August, 1921, Foster & Adams "abandoned said well and said lease and said casing, and never at any time thereafter made any attempt to develop said lands or any part thereof described in said

lease." The casing remained in the well until June, 1923, when it was, by Foster & Adams, drawn and stacked upon the real estate. The lease expired December 18, 1923, and thereafter, on March 3, 1925, Foster & Adams, treating the casing as their own property, sold it to Jacob Schaffner, appellant herein; but appellee, claiming abandonment of the casing by Foster & Adams and resulting ownership in himself, refused to permit Schaffner to remove the property, and instituted suit to cancel lease and to have the court adjudge the ownership of the property. Pending the litigation, the court appointed a receiver, who sold the casing pursuant to court order, for the sum of $2,525, and now holds the proceeds.

Conclusions of law stated by the court were to the effect that appellee was entitled to the proceeds of the sale of the casing in hands of receiver, and that the lease be canceled.

The important question is as to the sufficiency of the evidence to sustain the court's finding that, in August, 1921, Foster & Adams abandoned the lease, the well it had completed, and the casing. The facts not being in dispute, the question as presented by the record before us is a question of law.

It is urged by appellee that abandonment as found by the court is shown by the fact, as found, that Foster & Adams, after August, 1921, took no further steps to develop the lease, and did nothing with the well they had drilled, from the time of its completion in August, 1921, to June, 1923, when they drew the casing, and that nothing was thereafter done with the casing till March, 1925, when, claiming ownership, Foster & Adams sold the property to appellant.

In considering the question, it must be borne in mind that the lease was for the term of five years, from December 18, 1918 to December 18, 1923, longer only if

gas or oil should be found in paying quantities; and that the lessee was given the right at any time to remove the property and fixtures it had placed thereon in development of the lease. There was no provision in the lease for forfeiture on the ground of abandonment, nonuser or otherwise during the five-year term, except for the failure to complete a well within the period of 18 months, and it was not necessary, even then, that the well should be productive.

Under the lease contract, the lessee was not required, upon completion of a nonproductive well, to drill another, nor to do anything with the one completed; nor was it required to remove the machinery or property used in constructing the well at any particular time. Whether appellee could have had the lease canceled at any time before the expiration of the five-year term, it is unnecessary to decide. It is sufficient to say that, under the facts stated in the finding, no steps were, in fact, taken by appellee to terminate the lease. The lease by its terms did not expire until December 18, 1923, and the mere failure of the lessee to remove the casing from the well and from the real estate for a period of two years after completion of the nonproducing well did not, under the lease contract, amount to an abandonment of the lease and lease contract in August, 1921, as stated by the court in its finding. The court did not find specially that the property was abandoned *after* the expiration of the lease, but it is now suggested by appellee that the facts found by the court so show. It is pointed out that the casing remained stacked upon the leased premises until March 3, 1925, a period of more than 14 months after the lease expired, and it is argued that such fact, in itself, amounted to an abandonment. We do not concur in that view. Abandonment has been defined as the relinquishment of property to which a person is entitled,

with no purpose of again claiming it, and without concern as to who may subsequently take possession; and, in considering the question before us, we must keep in mind the distinction between abandonment and laches. As has been said: "Abandonment effectuates intention. Laches defeats intention. Abandonment is voluntary. Laches operates *in invitum.*" *Duryea* v. *Elkhorn Corporation* (1924), 123 Me. 482, 124 Atl. 206. To constitute an abandonment of property, there must be a concurrence of the intention to abandon and an actual relinquishment. *Utt* v. *Frey* (1895), 106 Cal. 392, 397, 39 Pac. 807.

The facts found by the court do not indicate an intention on the part of Foster & Adams to abandon the property. They show the contrary. Foster & Adams went upon the premises during the life of the lease and removed the casing from the well. Had the property been left in the well, attached to the leasehold, the rights of the parties after the expiration of the lease would have been more favorable to appellee. See *Michaels* v. *Pontius* (1922), 83 Ind. App. 66, 137 N. E. 579. If Foster & Adams had intended to abandon the casing, they would have left it in the well and saved the expense of its removal. The sale of the property after removal from the well is a further indication that the owners had not intended to abandon it. Besides, it would be unreasonable to presume that property which could be sold for a sum in excess of $2,500 would be abandoned by the owner. Intention to abandon is not to be implied from the mere fact that the property was not removed from the premises for a period of 14 months after the expiration of the lease. See *Log-Owners' Booming Co.* v. *Hubbell* (1903), 135 Mich. 65, 97 N. W. 157, 4 L. R. A. (N. S.) 573; *Livermore* v. *White* (1883), 74 Me. 452, 43 Am. Rep. 600.

We hold that, under the facts and circumstances as

shown by the evidence, which facts are correctly stated in the court's findings, the property in controversy was not abandoned after December 18, 1923, the date when the lease expired.

Appellee makes no claim that he has acquired title to the casing in question by reason of laches on the part of appellant or Foster & Adams. Such a claim, however, would avail him nothing, for it does not appear that the delay in removing the property so prejudiced the rights of appellee as to make it inequitable for appellant to assert ownership as against appellee. 4 Pomeroy, Equity Jurisp. §1442.

Judgment reversed, with instructions to restate the conclusions of law in accordance with this opinion, and render judgment accordingly.