**RIGHT REASON PUBLICATIONS,**
**Appellant–Plaintiff,**

**v.**

**Anthony SILVA, Appellee–Defendant.**

**No. 71A05–9707–CV–306.**

Court of Appeals of Indiana.

March 10, 1998.

Charles P. Rice, South Bend, for Appellant–Plaintiff.

Ivan E. Bodensteiner, Valparaiso, for Appellee–Defendant.

## OPINION

BARTEAU, Judge.

Right Reason Publications ("Right Reason") appeals the dismissal of its complaint against Anthony Silva.

Affirmed.

### FACTS

Right Reason "is a not-for-profit educational club which publishes an independent student journal at the University of Notre Dame." R. 6. Apparently, Right Reason circulates copies of its journal by placing them in distribution stands located at the University. On April 23, 1996, Silva took and disposed of "approximately 2,000 copies of [the student journal] from distribution stands at various locations at the University of Notre Dame." R. 6. This event prompted Right Reason to file a complaint against Silva. This complaint was later amended. Silva, pursuant to Indiana Trial Rule 12(B)(6), moved to dismiss Right Reason's amended complaint for failure to state a claim upon which relief could be granted. The trial court granted Silva's motion to dismiss, and Right Reason now appeals.

### STANDARD OF REVIEW

"A Trial Rule 12(B)(6) motion to dismiss tests the legal sufficiency of the complaint." *Johnson v. Scandia Assocs., Inc.,* 641 N.E.2d 51, 56 (Ind.Ct.App.1994). When reviewing a 12(B)(6) motion to dismiss, "[w]e view the pleadings in the light most favorable to the nonmoving party, and we draw every reasonable inference in favor of that party." *Couch v. Hamilton County Bd. of Zoning Appeals,* 609 N.E.2d 39, 41 (Ind.Ct.App. 1993). "We will affirm a successful T.R. 12(B)(6) motion when a complaint states a set of facts which, even if true, would not support the relief requested in that complaint." *Garage Doors of Indianapolis v. Morton,* 682 N.E.2d 1296, 1301 (Ind.Ct.App.1997), *trans. denied.* "Further, we will affirm the trial court's grant of a motion to dismiss if it is sustainable on any theory or basis found in the record." *Id.*

### CIVIL LIABILITY FOR CRIMINAL MISCHIEF

#### I.

In Count I of its amended complaint, Right Reason claims that Silva has incurred civil liability under Indiana's criminal mischief statute, which states, in relevant part:

A person who ... knowingly or intentionally causes another to suffer pecuniary loss by deception or by an expression of intention to injure another person or to damage the property or to impair the rights of another person ... commits criminal mischief....

Ind.Code § 35–43–1–2(a)(2). A civil action under this statute is permitted by Indiana Code Section 34–4–30–1, which states that "[i]f a person suffers a pecuniary loss as a result of a violation of IC 35–43 ..., the person may bring a civil action against the person who caused the loss for [damages.]"

According to the allegations set forth in Count I, Silva "knowingly or intentionally caused pecuniary loss to [Right Reason] by actions which expressed an intention to impair": (1) "the common law rights of free expression of the publishers of Right Reason," (2) "the rights of the publishers of Right Reason under Article I, section 9 of the Indiana Constitution," (3) "the fundamental rights of the publishers of Right Reason as expressed in Article I, section 1 of the Indiana Constitution," and (4) "the rights to publish, the right to be free from harassment, and the right to free exchange of ideas guaranteed to the publishers of Right Reason under *du Lac, Student Life Policies and Procedures, University of Notre Dame 1995– 1996* [.]" R. 6–7.

In our view, none of these allegations provide a basis upon which relief can be granted. We first note that no legally cognizable claim is presented by the allegation invoking a common law right of free expression. Even if such a right existed in Indiana, Silva could not have impaired it. Silva is a private citizen, not a state actor; and we refuse to hold that a right of free expression may be impaired by someone other than a state actor.

We also note that the allegations invoking free expression rights under the Indiana Constitution fail to state a claim

upon which relief can be granted. "The state and federal constitutional provisions do not apply to unauthorized acts of private citizens." *Hutchinson v. State,* 477 N.E.2d 850, 853 (Ind.1985). Because Silva is a private citizen, his acts, unauthorized by the state, could not have impaired the constitutional rights invoked by Right Reason.

∎ We finally note that Right Reason, by alleging the impairment of rights granted by the Notre Dame publication "Student Life Policies and Procedures," states no claim upon which relief can be granted. Right Reason has not cited, and we cannot find, any authority to support the proposition that a judicial remedy is appropriate when a private citizen, like Silva, violates rights granted by a private university's publication. We conclude that there is no cause of action for violation of the rights asserted by Right Reason. The trial court properly dismissed the portion of the amended complaint which purports to impose liability under Indiana Code Section 35–43–1–2(a)(2).

## II.

∎ In Count I of its amended complaint, Right Reason makes another allegation under the criminal mischief statute. It is alleged that Silva "recklessly, knowingly, or intentionally damaged personal property which was contained in a structure or located at a school or community center." R. 7. This allegation invokes Indiana Code Section 35–43–1–2(b)(5), which states, in relevant part:

A person who recklessly, knowingly, or intentionally damages ... personal property contained in a structure or located at [a school or community center] without the consent of the owner, possessor, or occupant of the property that is damaged, commits institutional criminal mischief. ...

We are convinced that, in this criminal mischief statute, the definition of the word "school" is not broad enough to include the University of Notre Dame.

∎ Criminal statutes are strictly construed; "they may not be enlarged beyond the fair meaning of the language used." *Pridgeon v. State,* 569 N.E.2d 722, 723 (Ind. Ct.App.1991). The fair meaning of the word "school" does not encompass a college or university. *See Lawrence v. Cain,* 144 Ind.

App. 210, 216, 245 N.E.2d 663, 666 (1969) (stating that "the word 'school' by common usage, is considered local school corporations and does not generally include higher seats of learning which are usually referred to as colleges or universities."); *see also Pridgeon,* 569 N.E.2d at 723 (noting that "[a]lthough the word 'school' has numerous meanings, this court excluded colleges and universities from the 'common usage' of this term in *Lawrence* ...."); *cf. id.* at 724 (holding that "[t]he words 'school property' do not include a college or university."). We conclude that, within the meaning of our criminal mischief statute, the University of Notre Dame is not a "school."

∎ We also conclude that our criminal mischief statute's term "community center" does not include the University of Notre Dame's grounds and facilities. A "community" is "[a] group of people living in the same locality and under the same government." *The American Heritage Dictionary of the English Language* 270 (William Morris ed., 1981). Although the term "community" may be given various meanings, we believe that the fair meaning of the term is broad enough to include members of the general public. A "community center," then, is a place to which members of the general public have access.

Notre Dame is a private university. Because it is private, its grounds and facilities may not necessarily be accessible to members of the general public. The criminal mischief statute's term "community center," therefore, does not include the grounds and facilities located at the University of Notre Dame. We hold that the trial court properly dismissed the portion of the amended complaint which invokes Indiana Code Section 35–43–1–2(b)(5).

### CIVIL LIABILITY FOR CRIMINAL CONVERSION

∎ In Count III of its amended complaint, Right Reason alleges that defendant Silva:

knowingly or intentionally exerted control over property of Plaintiff in a manner and extent other than that to which Plaintiff had consented, to wit: taking and disposing of approximately 2,000 copies of Right Reason from distribution stands at various locations at the University of Notre Dame.

R. 9. This allegation is grounded in our criminal conversion statute, which states, "[a] person who knowingly or intentionally exerts unauthorized control over property of another person commits criminal conversion, a Class A misdemeanor." Ind.Code § 35–43–4–3. "[A] person's control over property of another person is 'unauthorized' if it is exerted ... in a manner or to an extent other than that to which the other person has consented[.]" Ind.Code § 35–43–4–1(b)(2). As is true of the criminal mischief statute, a civil action under the criminal conversion statute is permitted by Indiana Code Section 34–4–30–1.

▉▉▉▉ Because it abandoned its student journals before Silva took and disposed of them, Right Reason has failed to state a redressable claim under our criminal conversion statute. "Abandonment has been defined as the relinquishment of property to which a person is entitled, with no purpose of again claiming it, and without concern as to who may subsequently take possession...." *Schaffner v. Benson,* 90 Ind.App. 420, 423–24, 166 N.E. 881, 883 (1929). "To constitute an abandonment of property, there must be a concurrence of the intention to abandon and an actual relinquishment." *Id.* at 424, 166 N.E. at 883. "An intention to abandon property ... may be inferred as a fact from the surrounding circumstances, and it can be shown by acts and conduct clearly inconsistent with any intention to retain and continue the use or ownership of the property...." 1 C.J.S. *Abandonment* § 5 (1985) (footnote omitted). "Abandonment of property divests the owner of his ownership, so as to bar him from further claim to it. Except that he, like anyone else, may appropriate it once it is abandoned if it has not already been appropriated by someone else." *Schuler v. Langdon,* 433 N.E.2d 841, 842 n. 1 (Ind.Ct.App. 1982).

Right Reason placed its student journals in distribution stands located at the University of Notre Dame. These student journals "were made available to anyone to take, without limitation." R. 13. We are convinced that Right Reason actually relinquished the student journals by placing them in distribution stands. We are also convinced that Right Reason intended to abandon the student journals, for, by making the journals freely available to the public, Right Reason displayed conduct inconsistent with an intention to maintain ownership of them.

Once Right Reason abandoned its student journals, it no longer owned them, and it had no claim to them. And because the student journals had been abandoned by Right Reason when Silva took and disposed of them, Silva did nothing inconsistent with Right Reason's property rights in the journals, for Right Reason had no such rights. Right Reason has therefore failed to state a redressable claim under our criminal conversion statute. The trial court properly dismissed Count III of Right Reason's amended complaint.

## CIVIL LIABILITY FOR VIOLATION OF CIVIL RIGHTS

▉▉▉ In Count II of its amended complaint, Right Reason alleges that Silva "intentionally or knowingly denied to the publishers of right [sic] Reason, because of the orthodox Roman Catholic viewpoints expressed in Right Reason, the full and equal use of publication distribution stands at LaFortune Student Center." R. 8. Right Reason grounds this allegation in a criminal statute, which states:

A person who knowingly or intentionally denies to another person, because of color, creed, disability, national origin, race, religion, or sex, the full and equal use of the services, facilities, or goods in:

(1) an establishment that caters or offers its services, facilities, or goods to the general public; or

(2) a housing project owned or subsidized by a governmental entity;

commits a civil rights violation, a Class B misdemeanor.

Ind.Code § 35–46–2–1.

We note that the legislature has not explicitly provided for a civil action under this statute.[1] Right Reason nevertheless argues

---

1. Under Indiana Code Section 34–4–30–1, a civil action may exist only for "violation of IC 35–43, IC 35–42–3–3, IC 35–42–3–4, or IC 35–45–9...."

that the legislature intended to permit enforcement of this statute through a civil action.

 "When a civil tort action is premised upon violation of a duty imposed by statute, the initial question to be determined by the court is whether the statute in question confers a private right of action." *Borne v. N.W. Allen County School Corp.*, 532 N.E.2d 1196, 1203 (Ind.Ct.App.1989). "[T]he determination of whether a civil cause of action exists for the violation of a criminal statute begins with an examination of legislative intent...." *Bartholomew County Beverage Co., Inc. v. Barco Beverage Corp., Inc.*, 524 N.E.2d 353, 356 (Ind.Ct.App.1988).

In our view, the legislature did not intend that Indiana Code Section 35–46–2–1 would be enforced through a private cause of action. This statute, by making a civil rights violation a Class B misdemeanor, imposes a criminal penalty. We refuse to hold that any other penalty, such as civil liability, may exist under this statute. *See Coons by Coons v. Kaiser*, 567 N.E.2d 851, 852 (Ind.Ct.App. 1991) (quoting *National R.R. Passenger Corp. v. National Ass'n of R.R. Passengers*, 414 U.S. 453, 459, 94 S.Ct. 690, 693–94, 38 L.Ed.2d 646 (1974)) (noting that, "when legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies. 'When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode.'"). Because Indiana Code Section 35–46–2–1 may not be enforced through a private cause of action, the trial court properly dismissed Count II of Right Reason's amended complaint.

Affirmed.

SHARPNACK, C.J., concurs.

BAILEY, J., concurs in result with opinion.

BAILEY, Judge, concurring in result.

I agree that in placing the student journals in distribution stands and making them available to the public without limitation, Right Reason "abandoned" said journals. In so doing, Right Reason relinquished all property rights in the journals thereby giving up any and all claims to them. Having made

this determination, the necessity to delve into other issues, especially those involving Constitutional law, is negated. As a matter of jurisprudence, we do not decide constitutional issues when a case can be decided on other grounds. *Town of Beverly Shores v. Bagnall*, 590 N.E.2d 1059,1063 (Ind.1992). Thus, I respectfully concur in result.