Paul **LONG, Indiana State Pipe Trades Association and United Association Local No. 166, Appellants–Defendants,**

v.

**DILLING MECHANICAL CONTRACTORS, INC.,
Appellee–Plaintiff.**

No. 09A05–9803–CV–157.

Court of Appeals of Indiana.

Feb. 16, 1999.

William R. Groth, Fillenwarth Dennerline Groth & Towe, Indianapolis, Indiana, Attorney for Appellants.

Michael L. Einterz, Indianapolis, Indiana, Attorney for Appellee.

**OPINION**

MATTINGLY, Judge.

Paul Long (Long), the Indiana State Pipe Trades Association (the Association), and the United Association Local No. 166 (Local 166) (collectively, the Defendants) bring an interlocutory appeal from the trial court's order that denied their "Motion to Dismiss and/or for Summary Judgment" and that granted summary judgment in favor of Dilling Mechanical Contractors, Inc. (Dilling).

Although numerous issues were raised on appeal, we find one issue dispositive: Whether the bags of trash Long took from Dilling's dumpster were abandoned property. We answer in the affirmative, and reverse and remand with instructions.

1. Ind.Code § 34–4–30–1 provided that: If a person suffers a pecuniary loss as a result of a violation of IC 35–43, IC 35–42–3–3, IC 35–42–3–4, or IC 35–45–9, the person may bring a civil action against the person who caused the loss for the following:
   (1) An amount not to exceed three (3) times the person's actual damages.
   (2) The costs of the action.
   (3) A reasonable attorney's fee.

**FACTS AND PROCEDURAL HISTORY**

Dilling maintained an office building in Logansport, Indiana. Outside of the office building was a lidded dumpster in which Dilling deposited trash. This dumpster, which Dilling leased for its exclusive use, stood on Dilling's property and was located at the curtilage about two feet from a public sidewalk. The rear of the dumpster abutted the building, and Dilling had constructed a wall slightly taller than the dumpster around the two sides of the dumpster. There was no wall in front of the dumpster, which remained open to public access. A waste management firm, pursuant to a contract with Dilling, was assigned to dispose of materials placed in the dumpster.

Since February of 1995, Long had been employed by the Association as a labor organizer. Long was seeking to organize Dilling's employees for union membership. In the early morning of August 24, 1995, Long went to Dilling's Logansport property and removed five or six filled plastic trash bags from the dumpster. Long took these trash bags hoping they would contain records revealing the names and phone numbers of Dilling employees, with whom Long wished to discuss collective bargaining. Long took these trash bags to a hotel room, where he rummaged though the bags' contents. Long then re-bagged the trash and deposited it in the hotel's trash receptacle.

At some point, Dilling became aware of Long's activities and filed a complaint against the Defendants, alleging they were civilly liable to Dilling. Dilling claimed that Long and the other Defendants committed criminal offenses, including theft, receiving stolen property, criminal trespass, burglary and corrupt business influence. As a result, pursuant to Ind.Code §§ 34–4–30–1 [1] (now Ind. Code § 34–24–3–1) and 34–4–30.5–5 [2] (now

2. Pursuant to Ind.Code § 34–4–30.5–5(b), "[a]n aggrieved person may bring an action against a person who has violated IC 35–45–6–2 ... for damages suffered as a result of corrupt business influence. Upon a showing by a preponderance of the evidence that the aggrieved person has been damaged by corrupt business influence, the court shall order the person causing the damage through a violation of IC 35–45–6–2 to pay to the aggrieved person:

Ind.Code § 34–24–2–6), Dilling claimed it was entitled to treble damages.

Defendants filed a "Motion to Dismiss and/or for Summary Judgment," which requested that Dilling's corrupt business influence claim be dismissed and that summary judgment be entered in their favor on Dilling's other claims. Dilling responded with a cross-motion for summary judgment. On March 24, 1997, the trial court issued an interlocutory order denying the Defendants' motion and granting Dilling's motion for summary judgment.

In that order, the trial court found that Long, by taking trash bags from the Dilling dumpster, committed theft;[3] receiving stolen property;[4] criminal trespass;[5] burglary;[6] and corrupt business influence.[7] The trial court appears to have held that not only Long, individually, but also the Association and Local 166, by application of the *respondeat superior* doctrine, were civilly liable to Dilling for these offenses. The trial court concluded that Dilling was entitled to have its damages determined by a jury.

On February 20, 1998, the trial court's interlocutory order was certified for appeal. We heard oral argument on August 31, 1998.

## STANDARD OF REVIEW

■ This court stands in the shoes of the trial court when it reviews the grant or denial of a summary judgment motion. *Anderson v. Yorktown Classroom Teachers Ass'n*, 677 N.E.2d 540, 543 (Ind.Ct.App.1997). When the designated materials show that there is no genuine factual issue and that the movant is entitled to judgment as a matter of law, the grant of a summary judgment motion will be affirmed. *See Claxton v. Hutton*, 615 N.E.2d 471, 473 (Ind.Ct.App.1993). We construe the evidence in the nonmovant's favor, resolving doubts about the existence of a genuine factual issue against the motion's proponent. *See Hoffman v. Dunn*, 496 N.E.2d 818, 820 (Ind.Ct.App.1986). A grant of summary judgment may be affirmed on any theory that the designated materials support. *Landau v. Bailey*, 629 N.E.2d 264, 266 (Ind.Ct.App.1994).

## DISCUSSION AND DECISION

### I. *Abandonment*

■ The Defendants argue that the trash in Dilling's dumpster was abandoned property. They cite the holdings of various criminal cases dealing with Fourth Amendment protections, representative of which is *United States v. Kramer*, 711 F.2d 789 (7th Cir.1983), *cert. denied*, 464 U.S. 962, 104 S.Ct. 397, 78 L.Ed.2d 339 (1983). However, we note that the "test for abandonment in the search and seizure context is distinct

(1) an amount equal to three (3) times his actual damages;
(2) the costs of the action;
(3) a reasonable attorney's fee; and
(4) any punitive damages awarded by the court and allowable under law."

3. Under Ind.Code § 35–43–4–2(a), "[a] person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft[.]"

4. Under Ind.Code § 35–43–4–2(b), "[a] person who knowingly or intentionally receives, retains, or disposes of the property of another person that has been the subject of theft commits receiving stolen property[.]"

5. Under Ind.Code § 35–43–2–2(a)(4), "[a] person who ... knowingly or intentionally interferes with the possession or use of the property of another person without the person's consent ... commits criminal trespass[.]"

6. Under Ind.Code § 35–43–2–1, "[a] person who breaks and enters the building or structure of another person, with intent to commit a felony in it, commits burglary[.]"

7. Under Ind.Code § 35–45–6–2, a person commits corrupt business influence if he:

(1) ... has knowingly or intentionally received any proceeds directly or indirectly derived from a pattern of racketeering activity, and ... uses or invests those proceeds or the proceeds derived from them to acquire an interest in property or to establish or to operate an enterprise;
(2) ... through a pattern of racketeering activity, knowingly or intentionally acquires or maintains, either directly or indirectly, an interest in or control of property or an enterprise; or
(3) ... is employed by or associated with an enterprise, and ... knowingly or intentionally conducts or otherwise participates in the activities of that enterprise through a pattern of racketeering activity[.]

from the property law notion of abandonment: it is possible for a person to retain a property interest in an item, but nonetheless to relinquish his or her reasonable expectation of privacy in the object." *United States v. Thomas*, 864 F.2d 843, 845 (D.C.Cir.1989).

State property law guides our analysis of the abandonment issue. The most recent Indiana case addressing abandonment is *Right Reason Publications v. Silva*, 691 N.E.2d 1347 (Ind.Ct.App.1998). In that case, the publisher of a student journal placed copies of that journal in distribution stands located at a private university. After Anthony Silva took and disposed of approximately 2000 copies of the journal, the publisher brought an action against Silva, claiming he was civilly liable for criminal conversion. In finding that the publisher failed to state a claim for relief under Indiana's criminal conversion statute, we first discussed the definition of abandonment:

> "Abandonment has been defined as the relinquishment of property to which a person is entitled, with no purpose of again claiming it, and without concern as to who may subsequently take possession...." *Schaffner v. Benson*, 90 Ind.App. 420, 423–24, 166 N.E. 881, 883 (1929). "To constitute an abandonment of property, there must be a concurrence of the intention to abandon and an actual relinquishment." *Id.* at 424, 166 N.E. at 883. "An intention to abandon property ... may be inferred as a fact from the surrounding circumstances, and it can be shown by acts and conduct clearly inconsistent with any intention to retain and continue the use or ownership of the property...." 1 C.J.S. *Abandonment* § 5 (1985) (footnote omitted). "Abandonment of property divests the owner of his ownership, so as to bar him from further claim to it. Except that he, like anyone else, may appropriate it once it is abandoned if it has not already been appropriated by someone else." *Schuler v. Langdon*, 433 N.E.2d 841, 842 n. 1 (Ind.Ct.App.1982).

*Id.* at 1351. In *Right Reason*, we found that the journals had been abandoned, as "by making the journals freely available to the public, [the publisher] displayed conduct inconsistent with an intention to maintain ownership over them." *Id.*

▉ Under the *Right Reason* standard, Dilling abandoned its trash. Dilling placed filled trash bags in an unlocked dumpster for a waste disposal firm's disposition. Generally, one relinquishes personalty when he voluntarily makes it available for someone else's disposition. *See id.*, 691 N.E.2d at 1351 ("[The Publisher] actually relinquished the student journals by placing them in distribution stands."). Thus, Dilling relinquished possession of its trash.

In addition, there is a widely held and long-standing doctrine that personalty discarded as waste is considered abandoned. *See United States v. Wiederkehr*, 33 M.J. 539, 541 (A.F.C.M.R.1991) ("Abandoned property is property the owner has thrown away."); *Ex parte Szczygiel*, 51 N.Y.S.2d 699, 702 (Sup.Ct.1944) ("The abandonment of property is the relinquishment of all title, possession or claim to or of it—a virtual intentional throwing away of it."); *Eads v. Brazelton*, 22 Ark. 499, 509 (1861) ("Property is said to be abandoned when it is thrown away...."); *M'Goon v. Ankeny*, 11 Ill. 558, 559 (1850) ("[I]f those who made the slag, considering it entirely worthless, cast it away with the intention of abandoning it, they thereby divested themselves of their title to it...."); William T. Brantly, *Of the Law of Personal Property* § 133, at 213–14 (1891) ("A thing is abandoned when the owner throws it away, or leaves it without custody, because he no longer wishes to account it as his property[.]").

Dilling claims that it did not abandon the contents of the trash bags taken by Long. Instead, it claims that it, as the generator of the trash, "retains ownership of the contents of the garbage until such time as the contracted carrier has exercised custody and control over those contents." Brief of Appellee at 14–15. In support of that contention, Dilling cites *National Serv–All, Inc. v. Indiana Department of State Revenue*, 644 N.E.2d 954, 958–59 (Ind. Tax Ct.1994). We find Dilling's reliance on *National Serv–All* is misplaced.

In *National Serv–All*, the question before the tax court concerned who owned the trash

being transported. If National was primarily engaged in hauling its own product, it was not entitled to a public transportation exemption. The tax court reviewed an agreement between National and one of its customers, the Fort Wayne Board of Public Works, and concluded that the Board owned the garbage being transported.[8] However, National also hauled garbage under other agreements. The tax court found that, with respect to these other agreements, National owned the trash.

> In so finding, the tax court observed that: It is little more than a fiction to view the generator of non-hazardous garbage as retaining property rights in the garbage until the hauler disposes of it or destroys it. From the homeowner's perspective, the garbage is disposed of when the hauler removes it. At that point, absent an agreement like National's ... with the Board, ownership of the garbage passes to the hauler. Moreover, even if title is viewed as remaining in the homeowner, title alone is not necessarily dispositive.
>
> In *Meridian Mortgage [Company v. State,* 182 Ind.App. 328, 395 N.E.2d 433 (1979) ], our court of appeals analyzed title, possession, and control as the indicia of ownership of personalty....
>
> As the court stated in *Indiana Waste [Systems of Indiana, Inc. v. Indiana Department of State Revenue,* 633 N.E.2d 359, 367 (Ind. Tax Ct.1994) ], "in addition to possession, '[t]he chief incidents of ownership ... are the rights of use and enjoyment, and of disposition.' " When a homeowner relinquishes all these incidents, the hauler acquires them. Consequently, when National carried [garbage not subject to the agreement between National and the Board], it was carrying its own property and was not engaged in "public transportation" within the meaning of the exemption.

*Id.* at 959 (citations omitted) (footnotes omitted).

The *National Serv–All* decision addressed the question of who owned the trash once it was picked up by the hauler. It did not

address the question presented in our case, that being whether an owner may abandon trash before the contracted carrier picks it up.

■ We answer that question in the affirmative and conclude that, if a generator of trash wishes to retain ownership or control of that trash, then it must take affirmative steps to do so. Although Dilling claimed that the trash bags taken by Long contained Dilling's sensitive and confidential company documents, it took no steps to protect those documents from abandonment. Those documents were neither shredded, nor placed in locked containers nor in an area which was not readily accessible to others. When trash, whether it be documents or other discarded material, is placed in trash bags, and those trash bags are placed in an unlocked dumpster on the curtilage and readily accessible to others, that trash has been abandoned. In that context, trash is trash. As noted in *Moran v. State,* 644 N.E.2d 536, 541 (Ind. 1994), "[i]t has often been said that if you do not want others to know what you drink, don't put empties in the trash."

## II. *The Effect of Abandonment*

As a result of Dilling's abandonment of its trash, its property rights were not abrogated by Long's taking of the bags. *See Right Reason,* 691 N.E.2d at 1351. Consequently, there can be no showing that Long committed theft, receiving stolen property, criminal trespass or burglary. In order to establish liability under any of these offenses as alleged, Dilling was required to show that it had a property right in the trash bags. Dilling cannot make this showing because it abandoned and, therefore, did not own the trash.

Nor can the Defendants be found liable for corrupt business influence. Ind.Code § 35–45–6–2 requires a "pattern of racketeering activity," which in this case would have been proven by the crimes of theft, receiving stolen property, criminal trespass and/or burglary resulting from Long's taking of the trash bags. Since Long did not commit

---

**8.** That agreement specifically provided that the Board was the "owner" of the garbage. The agreement between Dilling and its contracted trash hauler was not in the record.

theft, receiving stolen property, criminal trespass or burglary, there can be no "pattern of racketeering activity." As a result, the Defendants cannot be liable for corrupt business influence.

The trial court erred when it entered summary judgment in Dilling's favor. Further, as Dilling cannot recover on any of the legal theories it advances, the trial court erred in refusing to grant the Defendants' summary judgment on Dilling's other claims. We therefore hold that Defendants' "Motion to Dismiss and/or for Summary Judgment" should have been granted.

## CONCLUSION

The trial court's grant of summary judgment in favor of Dilling is reversed. The trial court's denial of the Defendants' "Motion to Dismiss and/or for Summary Judgment" is also reversed. This cause is remanded to the trial court with instructions to dismiss Dilling's corrupt business influence claim, and to enter summary judgment on Dilling's other claims in favor of the Defendants.

Reversed and remanded.

NAJAM, J., and FRIEDLANDER, J., concur.