Joseph PEDRAZA; Howard Vanselow; and Nick Dvorscak, Appellants–Defendants,

v.

CITY OF EAST CHICAGO; Robert A. Patrick, Mayor; City of East Chicago Fire Department; and James Dawson, Fire Chief, Appellees–Plaintiffs.

No. 45A03–0005–CV–188.

Court of Appeals of Indiana.

April 9, 2001.

Larry D. Stassin, Hammond, IN, Attorney for Appellants.

Michael W. Bosch, Hammond, IN, Attorney for Appellees.

## OPINION

RATLIFF, Senior Judge.

### STATEMENT OF THE CASE

Plaintiffs–Appellants Joseph Pedraza, Howard Vanselow, and Nick Dvorscak (collectively, "Appellants") appeal from the trial court's order granting summary judgment in favor of Defendants Appellees City of East Chicago, Robert A. Pastrick, Mayor, City of East Chicago Fire Department, and James Dawson, Fire Chief (collectively, "Appellees").

We affirm.

### ISSUE

We restate the issues presented by Appellants as follows:

I. Whether the Indiana Tort Claims Act applies to this lawsuit and whether the Mayor and Fire Chief are immune from this lawsuit.

II. Whether the trial court correctly found that there was no genuine issue of material fact and appropriately issued an order granting summary judgment in favor of Appellees regarding the appropriateness of the City of East Chicago's decision to pay fire department employees who do different kinds of work at different rates, to make overtime available to some employees and not others, and to require some employees to be on call without providing extra compensation for that duty.

### FACTS AND PROCEDURAL HISTORY

The amended complaint alleges that Appellants are all East Chicago staff firefighters employed by the East Chicago Fire Department. The East Chicago Fire Department divides its firefighters into two categories, line firefighters and staff firefighters. Line firefighters work a schedule of twenty-four hours on duty followed by forty-eight hours off-duty. The staff firefighters, who handle day-to-day administrative chores, work Monday through Friday from 8:00 a.m. to 4:00 p.m.

The amended complaint additionally alleges that line firefighters receive forty-five vacation days each year and staff firefighters receive thirty-five vacation days each year. Line firefighters are allowed to work overtime according to a seniority list, while staff firefighters' names are not placed on that list. Furthermore, staff firefighters receive no compensation for being on call, while staff firefighters within the Inspection Bureau receive an additional $7,000.00 in compensation for both being on call and actual service when called in while on call.

Appellants filed a complaint against Appellees on February 1, 1999, alleging that the differences in vacation time, overtime availability, and differences in on-call compensation between staff firefighters in the

Fire Department and Inspection Bureau were arbitrary, discriminatory, and not provided for by law. On April 23, 1999, Appellees filed a motion to dismiss the complaint pursuant to Ind. Trial Rule 12(B)(1) & (6). However, Appellees filed affidavits with the motion to dismiss.

Appellants filed a notice of intent to take default judgment on April 27, 1999, because Appellees had not filed an answer to the complaint. Appellants filed an amended complaint on May 10, 1999. On May 11, 1999, Appellees filed a motion to dismiss the amended complaint. On May 20, 1999, Appellants filed their memorandum of law in opposition to Appellees' motion to dismiss.

The trial court held a hearing on the motion on July 13, 1999. At that hearing the trial court decided to treat the motion as a motion for summary judgment instead of a motion to dismiss. On July 29, 1999, Appellants filed a memorandum of law in opposition to Appellees' motion for summary judgment. On September 10, 1999, Appellees filed a response to Appellants' memorandum opposing summary judgment. A hearing was held on November 15, 1999, after which the trial court granted Appellees' motion for summary judgment. The order reflecting that decision, which is the subject of this appeal, was filed on December 20, 1999.

On January 18, 2000, Appellants filed a motion to correct errors alleging that the trial court erred by granting Appellees' motion for summary judgment. A hearing was held on March 20, 2000. The trial court denied Appellants' motion to correct errors and filed that order on April 25, 2000.

*DISCUSSION AND DECISION*
STANDARD OF REVIEW

When reviewing a 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted, this court accepts as true the facts alleged in the complaint. *Hudgins v. McAtee,* 596 N.E.2d 286, 288 (Ind.Ct.App.1992). A T.R. 12(B)(6) motion to dismiss tests the legal sufficiency of the complaint. *Right Reason Publications v. Silva,* 691 N.E.2d 1347, 1349 (Ind.Ct.App.1998). When reviewing a T.R. 12(B)(6) motion to dismiss, we view the pleadings in the light most favorable to the non-moving party, and draw every reasonable inference in favor of that party. *Id.* We will affirm a successful T.R. 12(B)(6) motion when a complaint states a set of facts, which, even if true, would not support the relief requested in that complaint. *Id.* However, if a T.R. 12(B)(6) motion is made, but matters outside the pleading are presented to the trial court and are not excluded by the trial court, then the motion shall be treated as one for summary judgment. *See* Ind. Trial Rule 12(B).

The purpose of summary judgment is to end litigation about which there can be no factual dispute and which may be determined as a matter of law. *LeBrun v. Conner,* 702 N.E.2d 754, 756 (Ind. Ct.App.1998). The moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact. Ind.Trial Rule 56(C); *Campbell v. Criterion Group,* 613 N.E.2d 423, 428 (Ind. Ct.App.1993), *on reh'g* 621 N.E.2d 342. Once the moving party makes a prima facie showing of the non-existence of a genuine issue of material fact, the burden shifts to the non-moving party to set forth specific facts showing the existence of a genuine issue for trial. T.R. 56(E); *Campbell,* 613 N.E.2d at 428. We must construe all designated evidence liberally in favor of the non-moving party and resolve any doubt against the moving party. *Porter v. Irvin's Interstate Brick & Block*

*Co., Inc.*, 691 N.E.2d 1363, 1364 (Ind.Ct. App.1998).

Summary judgment is appropriate only when the evidentiary matter designated by the parties shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Aide v. Chrysler Financial Corp.*, 699 N.E.2d 1177, 1180 (Ind.Ct.App.1998), *trans. denied.* Where material facts conflict, or undisputed facts lead to conflicting material inferences, summary judgment is inappropriate. *Butler v. City of Indianapolis*, 668 N.E.2d 1227, 1228 (Ind.1996). Summary judgment may not be used as a procedural device to avoid a trial on claims that are perceived to be weak. *Yin v. Society National Bank Indiana*, 665 N.E.2d 58, 65 (Ind.Ct.App.1996), *trans. denied; Campbell v. Railroadmen's Federal Savings and Loan Association of Indianapolis*, 443 N.E.2d 81, 84 (Ind.Ct.App. 1982).

On appeal, the trial court's order granting or denying a motion for summary judgment is cloaked with the presumption of validity. *See Indiana Bd. Of Public Welfare v. Tioga Pines*, 622 N.E.2d 935, 939–940 (Ind.1993), *cert. denied*, 510 U.S. 1195, 114 S.Ct. 1302, 127 L.Ed.2d 654 (1994). The party appealing from an order granting a motion for summary judgment has the burden of persuading the appellate tribunal that the decision to issue the order granting summary judgment was erroneous. *See Indiana Department of*

*Revenue v. Caylor-Nickel Clinic*, 587 N.E.2d 1311, 1313 (Ind.1992). On review, we face the same issues that were before the trial court and follow the same process. *Id.* All properly asserted facts and reasonable inferences should be resolved against the movant. *Belford v. McHale, Cook & Welch*, 648 N.E.2d 1241, 1244 (Ind.Ct.App. 1995), *trans. denied.* The appellate court may not reverse the entry of summary judgment on the ground that a genuine issue of material fact exists unless the material fact and the evidence relevant thereto were designated specifically to the trial court. Ind. Trial Rule 56(H). Furthermore, we will sustain the trial court's decision to grant a motion for summary judgment if it is sustainable by any theory or basis found in the record. *See Ward v. First Indiana Plaza Joint Venture*, 725 N.E.2d 134, 136 (Ind.Ct.App.2000).[1]

## I. INDIANA TORT CLAIMS ACT [2]

The trial court's order on the motion for summary judgment reads in relevant part as follows:

> The Court having reviewed all of the pleadings, memorandums[sic] and designated materials of the parties and having heard argument of counsel hereby GRANTS the Defendants['] motion for summary judgment with respect to both the City and the individual Defendants.

(R. 98).

Appellants argue that we should reverse the trial court's decision to grant Appellees' motion for summary judgment

---

1. Some cases erroneously cite this part of the standard of review used for orders granting summary judgment motions, review of a general verdict, and reviewing findings under Ind. Trial Rule 52, when the context involves review of a trial court's ruling on a motion to dismiss under Ind. Trial Rule 12(B)(6). *See e.g., Yoder Grain, Inc. v. Antalis*, 722 N.E.2d 840, 845 (Ind.Ct.App.2000); *Minks v. Pina*, 709 N.E.2d 379, 381 (Ind.Ct.App.1999); *Right Reason Publications v. Silva*, 691 N.E.2d 1347, 1349 (Ind.Ct.App.1998). We may not use that standard of review in cases involving T.R. 12(B)(6) unless, as is the case here, the motion has been converted to a motion for summary judgment.

2. Ind.Code § 34–13–3–1 *et seq.*

because Appellees are not entitled to notice under the Indiana Tort Claims Act. Appellees had argued, in part, before the trial court in their motion that Appellants were required to comply with the Indiana Tort Claims Act because Appellants alleged that Appellees had acted in an arbitrary and discriminatory way.

We agree with Appellants that this case sounds in contract and not in tort. We previously have held that the immunity provision of the Indiana Tort Claims Act is limited to certain acts by governmental entities resulting in injury to or death of a person, or damage to property. *See Underwood v. City of Jasper Mun. Util.,* 678 N.E.2d 1280, 1283 (Ind.Ct.App.1997); Ind. Code § 34–6–2–75(a). The complaint in the case at bar alleges none of those things.

■■■■ Appellee has not responded to the argument contained in Appellants' brief that the Indiana Tort Claims Act is inapplicable in this situation. Normally, when an appellee fails to file a brief, we will reverse if appellant demonstrates prima facie error occurred. *See Johnson County Rural Electric v. Burnell,* 484 N.E.2d 989, 991 (Ind.Ct.App.1985). In *Roth v. Vandalia Railroad Co.,* 187 Ind. 302, 119 N.E. 1 (1919), our supreme court held that this rule also applied where the appellees filed a brief which did not respond to all the issues raised by the appellant.

In the present case, the trial court's rationale for granting the motion for summary judgment is not apparent on the face of the order itself. However, we may sustain an order on a motion for summary judgment upon any theory supported by the designated materials. T.R. 56(C). Therefore, even though we are inclined to agree with Appellants that the Indiana Tort Claims Act is inapplicable in the case at bar, that theory is not the only theory presented in the materials designated by the parties.

■■■■ In addition, while we agree with Appellants that the Mayor and the Fire Chief are not immune from suit under the Indiana Tort Claims Act, Appellees are correct in their argument that the Mayor and the Fire Chief should be dismissed from this lawsuit, and that the portion of the order granting summary judgment in their favor is correct. First, there is no allegation that Appellants had a contract with either the Fire Chief or Mayor. Furthermore, as this court previously has held with regard to judgments against public officials, no judgment shall be rendered against him in his individual capacity unless he is so named. *See Mays v. Parker,* 147 Ind.App. 81, 258 N.E.2d 666, 679 (1970); Ind. Trial Rule 19(F)(3). Additionally, we have held that naming a defendant by his position or office raises a presumption he has been sued in his official capacity. *Crawford v. City of Muncie,* 655 N.E.2d 614, 620 (Ind.Ct.App.1995). If a plaintiff wants to sue a public official in his or her personal capacity or in both personal and official capacities, the plaintiff should state so expressly in the complaint. *See Lake Co. Juvenile Ct. v. Swanson,* 671 N.E.2d 429, (Ind.Ct.App.1996). The trial court did not err by granting the motion for summary judgment with respect to the Mayor and the Fire Chief.

## II. EMPLOYEES TREATED DIFFERENTLY

■■■■ Appellants argue that Appellees are not authorized by statute, ordinance or otherwise to give certain employees different amounts of vacation time, different opportunities for overtime, and to provide additional compensation to only some employees for on-call duty. Appellees contend that there is no statute or case law

that prohibits employers from compensating their employees differently.

Ind.Code § 36–8–3–3(d) delegates the authority to fix the annual compensation of the members of the police and fire departments. That statute reads in relevant part as follows:

The annual compensation of all members of the police and fire departments and other appointees shall be fixed by ordinance of the legislative body before August 20 of each year for the ensuing budget year. *The ordinance may grade the members of the departments and regulate their pay by rank as well as by length of service.* If the legislative body fails to adopt an ordinance fixing the compensation of members of the police or fire department, the safety board may fix their compensation, subject to change by ordinance. (Emphasis supplied).

Ind.Code § 36–8–3–3(d).

The City of East Chicago's legislative body adopted a salary ordinance for police and fire personnel, No. 0–98–0006 § 1, which is at the heart of this dispute. The ordinance provides in relevant part as follows:

The above is the maximum base pay for the different job classifications of the Fire Department and in addition the following compensation is adjusted and added to the base pay accordingly.

(R. 81). The adjustments to the base pay mentioned in the ordinance pertain to vacation time and extra compensation due to rank and grade among other things. (R. 81).

Black's Law Dictionary includes several definitions of the word "grade" including the following:

Quality, value, relative position, rank, status, or standing. *Mossman v. Chica-*

*go & Southern Air Lines,* 236 Mo.App. 282, 153 S.W.2d 799, 801, 802.

BLACK'S LAW DICTIONARY 628 (5th ed. 1979). Black's Law Dictionary also contains a definition of the word "rank" which is as follows:

Position in society. Grade of quality or value. Grade of official standing. The order or place in which certain officers are placed in the army and navy, in relation to others. *Rank* is often used to express something different from *office.* It then becomes a designation or title of honor, dignity, or distinction conferred upon an officer in order to fix his relative position in reference to other officers in matters of privilege, precedence, and sometimes of command, or by which to determine his pay and emoluments. This is the case with the staff officers of the army. *Wood v. U.S.,* 15 Ct.Cl. 151, 159.

BLACK'S LAW DICTIONARY 1133 (5th ed. 1979). The word "classification" is defined as follows by Black's Law Dictionary:

Arrangement into groups or categories on the basis of established criteria. The word may have two meanings, one primarily signifying a division required by statutes, fundamental and substantial, and the other secondary, signifying an arrangement or enumeration adopted for convenience only.

BLACK'S LAW DICTIONARY 226 (5th ed. 1979).

In *Commonwealth ex rel. Margiotti v. Sutton,* 327 Pa. 337, 341, 193 A. 250, 252 (1937), the court held that under the state constitutional provision requiring that organization, jurisdiction, and powers of all courts of the same class or grade shall be uniform, the words "class" and "grade" are synonymous, and should be given their ordinary, not technical, meaning. P.S. Const. art. 5 § 26; *See also* 18A W & P, "Grade; Grading" (1956). Furthermore,

in *Haynie v. City of Little Rock*, 243 Ark. 86, 418 S.W.2d 633, 636 (1967), the court held that the words "grade" and "rank" are synonymous within a statute requiring each board of civil service commissioners to prescribe rules governing fire departments and requiring that rules provide for promotion based upon open and competitive examinations, that lists be created for each rank of service and promotion made therefrom and that advancement in rank or increase in salary beyond limits fixed for grade by rules of commission constitute a promotion. *See also,* 18A W & P, "Grade" (2000 Supp.).

■ Based upon our review of the authority mentioned above, we hold that the words "grade," "rank," a "classification" are synonymous for purposes of Ind.Code § 36-8-3-3(d). That statute allows local governments to grade members of departments and regulate their pay by rank and length of service. The statute on its face contemplates that employees of the fire department are going to be compensated differently due to differing levels of experience and responsibilities attendant to their positions. The ordinance provides for base pay according to job classification and extra compensation relative to rank. The different treatment of staff and line firefighters seems to be reasonable in light of their relative responsibilities, and there is no apparent illegal basis for that treatment. Further, there is nothing in the statute or the ordinance that prohibits compensating the various grades, ranks or classes of firefighters differently where their responsibilities are different; in fact, it provides therefor.

■ Additionally, the ordinance itself speaks to the issue of the availability of overtime. Section 2 of the ordinance reads as follows:

SECTION 2. Salary and wage rates are herein established as maximum amounts of compensation to be paid for specific position or classification, based on an established work week. *Overtime compensation will be compiled and allowed on this basis only.* Implementation of this ordinance is based on available funds. (Emphasis supplied.).

(R. 82). It is logical that if the position requiring an employee to work overtime is a line firefighter position, then only line firefighters would be eligible to work that available overtime based upon their established work week. It also is reasonable for that overtime work to be offered first to those line firefighters with the most experience. Staff firefighters have a different work schedule and responsibilities. It would be illogical to allow staff firefighters to work overtime in a totally different position. Besides, it would be contrary to the express language of the ordinance. That language is permitted by statute.

■ Appellants also argue that they should receive additional compensation for being on call. In support of that argument they point to the staff firefighters who work for the Inspection Bureau. Those staff firefighters receive an additional $7,000.00 per year in compensation for being on call. Appellants receive overtime compensation any time they are called out, but not for being on call.

Staff firefighters in the Inspection Bureau have limitations placed on them when they are on call. Those on call shifts occur in two-week periods. Those staff firefighters are to refrain from using alcohol, they must not leave the general area of East Chicago, so that they can reach the scene of the fire quickly, and must remain accessible by the fire department phone center. None of those restrictions or requirements are placed upon Appellants. Appellees argue that the additional compensation is justified because

the on-call shift is closer to an actual work shift. Again, the difference in compensation appears to be reasonable in light of the differences in responsibilities and restrictions. Furthermore, any time staff firefighters, such as Appellants, are called in to work, those firefighters are paid for the overtime worked. The trial court did not err.

Last, Appellants allege that they are treated differently regarding vacation time. They allege that staff firefighters receive approximately thirty-five vacation days per year, while line firefighters receive approximately forty-five vacation days per year.

The section of the ordinance that provides for vacation time reads as follows:

Vacation and Personal Leave: 15 workdays (24 hr. equals one workday) equals 39[3] vacation days per year. Up to 78 unused vacation days limit upon termination of employment.

(R. 81).

While we understand how there could be confusion on the part of staff firefighters regarding how much vacation time they receive in comparison to how much vacation time line firefighters receive, we conclude that the two groups are treated equally according to the terms of the ordinance.

If twenty-four hours are the equivalent of one workday, and the firefighters are entitled to fifteen workdays in vacation time, then they are entitled to 360 hours of vacation time. Forty-five vacation days multiplied by eight-hour days equals 360 hours of vacation time. Put more simply, the first part of the ordinance speaks to vacation time for line firefighters, while the second part speaks to vacation time for staff firefighters. The line firefighters, who work twenty-four hour shifts, which by ordinance equals one workday, are entitled to 360 hours of vacation. The staff firefighters who work eight hour days, five days a week, are entitled to forty-five days or 360 hours of vacation. While the vacation time is expressed differently because there are two different types of shifts, each of the groups is treated equally under the express terms of the ordinance. The trial court did not err by issuing an order granting summary judgment in favor of Appellees.

### CONCLUSION

The trial court correctly treated the motion to dismiss as a motion for summary judgment. The Indiana Tort Claims Act does not apply to this complaint because there is no allegation of certain acts by governmental entities resulting in injury to or death of a person, or damage to property. Furthermore, the Fire Chief and the Mayor of East Chicago properly were dismissed because no judgment shall be rendered against public officials in their individual capacities unless they are so named. Here, they were not.

The terms "grade," "rank," and "classification" are synonymous for purposes of Ind.Code § 36–8–3–3(d). Our review of that statute and the ordinance involved leads us to the conclusion that Appellants and Appellees were treated differently based upon a reasonable and legal basis. The firefighters were compensated according to their relative rank and experience and job responsibilities.

The City of East Chicago, by ordinance authorized by statute, properly handles the issue of overtime compensation as well. Overtime is doled out to those with match-

---

**3.** Both parties agree that this is a scrivener's error. The ordinance should read forty-five days instead of thirty-nine days.

ing responsibilities based upon the normal work schedule and seniority. Therefore, it is appropriate for only line firefighters to be eligible based upon seniority to work overtime for a line firefighter shift.

The ordinance spells out how vacation time is to allotted to the firefighters. Our interpretation of the statute leads us to the conclusion that each group of firefighters is entitled to the same number of hours of vacation. The confusion seems to stem from the manner in which that entitlement is expressed.

Because on call duties and restrictions are different between those holding positions such as Appellants' positions, and staff firefighters of the Inspection Bureau, the difference in compensation is justified. Again, the statute and the ordinance allow differences in compensation.

The trial court did not err by issuing its order granting summary judgment in favor of Appellees.

Affirmed.

BARNES, J., and ROBB, J., concur.