FILED

Feb 11 2019, 9:12 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Zachary J. Stock | Curtis T. Hill, Jr. |
| Indianapolis, Indiana | Attorney General of Indiana |
| | Henry A. Flores |
| | Deputy Attorney General |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Crystal G. Smith, | February 11, 2019 |
| *Appellant-Defendant,* | Court of Appeals Case No. 18A-CR-1635 |
| v. | Appeal from the Hendricks Superior Court |
| State of Indiana, | The Honorable Stephenie LeMay-Luken, Judge. |
| *Appellee-Plaintiff.* | Trial Court Cause No. 32D05-1708-F6-778 |

**Tavitas, Judge.**

## Case Summary

[1]     Crystal Gayle Smith appeals her conviction, following a jury trial, for theft, a Level 6 felony.  We affirm.

## Issue

Smith raises one issue on appeal, which we restate as whether sufficient evidence exists to support her conviction.

## Facts

Champion Chevrolet ("Champion") is an auto dealership in Avon, Indiana. Champion's premises are monitored by video surveillance. When Champion's customers buy new tires, Champion disposes of the customers' old tires. As a matter of "company policy," Champion does not give away or resell the old tires because:

> people typically replace their tires when their old tires are unsafe and shouldn't be used anymore, so, . . . [Champion] can't give them away to people. Otherwise, [Champion would] be liable if . . . [people] took that unsafe tire and had a blowout on the highway or whatever. [The used tires are] just not safe for people to be driving on.

Tr. Vol. II p. 59; *see id*. at 64-65 (". . .[I]t's company policy that we don't give people permission to take those tires . . . it would put [Champion] at tremendous liability if someone were to take that tire and put it on their vehicle or sell it to someone who would then put it on a vehicle[.]").

Champion routinely stores used tires in a fenced "dumpster area and . . . scrap area" that is "typically locked." *Id*. at 58. The enclosure bears a warning sign "that says . . . . [y]ou're being watched[.]" *Id*. The used tires remain within the enclosure until they are retrieved by a contractor that Champion pays to

retrieve, dispose of, and/or recycle them. Champion undertakes this disposal procedure as a prophylactic measure to prevent legal exposure. Champion does not sell the used tires or collect a recycling reimbursement for the used tires.

[5] On August 1, 2017, the enclosure was inadvertently left unlocked. At approximately 9:50 p.m., Smith and an accomplice entered Champion's premises, entered the enclosure, removed several used tires, loaded them into a vehicle, and drove away. A Champion employee, who was monitoring the surveillance system, observed Smith and her accomplice and called the police.

[6] Officer Ryan Grismore of the Avon Police Department was traveling westbound on US 36 in the general vicinity of Champion when he heard a dispatch related to Champion's stolen tires; the dispatch included a description of the suspect vehicle. Officer Grismore subsequently observed an eastbound vehicle that matched the description of the suspect vehicle. Officer Grismore followed the vehicle, "ensured [he] had the correct vehicle," and initiated a traffic stop. *Id*. at 71.

[7] Smith and her accomplice were in the vehicle. Aided by backup officers, Officer Grismore escorted Smith and her accomplice to Champion's premises, where they returned the used tires. The police advised Smith and her accomplice that criminal summonses were forthcoming.

[8] On or about August 4, 2017, the State charged Smith with theft, a Class A misdemeanor. Smith had a prior, unrelated conviction for theft. The trial court conducted a jury trial on May 14, 2018. Champion's general sales manager,

Mike Mills, testified to the foregoing facts. After the State presented its case-in chief, Smith moved for a directed verdict on the basis that the State had failed to prove a material element – "that there was any value or use of the [tires]." *Id*. at 80. The State countered that Mills had testified "about the liability concerns" and that "it's that future possibility of the liability which is the value in this case." *Id*. at 81. The trial court denied Smith's motion for directed verdict.

[9] At the close of the evidence, the jury returned a guilty verdict for theft, a Class A misdemeanor. Smith subsequently admitted that she had a prior unrelated theft conviction that elevated the charge; and the trial court entered an order of conviction for theft, a Level 6 felony. The trial court imposed no jail time and assessed a fine and costs. Smith now appeals.

## Analysis

[10] Smith challenges the sufficiency of the evidence to support her conviction. When there is a challenge to the sufficiency of the evidence, "[w]e neither reweigh evidence nor judge witness credibility." *Gibson v. State*, 51 N.E.3d 204, 210 (Ind. 2016) (citing *Bieghler v. State*, 481 N.E.2d 78, 84 (Ind. 1985)). Instead, "we 'consider only that evidence most favorable to the judgment together with all reasonable inferences drawn therefrom.'" *Id*. (quoting *Bieghler*, 481 N.E.2d at 84). "We will affirm the judgment if it is supported by 'substantial evidence of probative value even if there is some conflict in that evidence.'" *Id*. (quoting *Bieghler*, 481 N.E.2d at 84); *see also McCallister v. State*, 91 N.E.3d 554, 558 (Ind.

2018) (holding that, even though there was conflicting evidence, it was "beside the point" because that argument "misapprehend[s] our limited role as a reviewing court"). Further, "[w]e will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Love v. State*, 73 N.E.3d 693, 696 (Ind. 2017) (citing *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007)).

[11] To convict Smith of theft, a Class A misdemeanor, the State had to prove that Smith "knowingly or intentionally exert[ed] unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use[.]" Ind. Code § 35-43-4-2. Smith does not dispute that she exerted unauthorized control over Champion's property. Rather, Smith contends that the tires were not "property" within the meaning of the statute because the State failed to establish that the tires were of any value to Champion.

[12] Although Smith cites *Long v. Dilling Mech. Contrs., Inc.*, 705 N.E.2d 1022 (Ind. Ct. App. 1999), *trans. denied,* in her brief, her reliance on *Long* is misplaced. Smith, inexplicably, asserts both that: (1) "*Long* . . . shows that abandoned property has no value to the one who abandons it and therefore cannot be the subject of a theft"; and (2) Smith "is not arguing that [Champion's] tires were abandoned." Appellant's Br. p. 5.

[13] *Long* is inapposite here and does not aid our review. In *Long*, Long – who was a union organizer – took trash bags from the Dilling company's dumpster, "hoping [the bags] would contain records revealing the names and phone

numbers of Dilling employees, with whom Long wished to discuss collective bargaining." *Long*, 705 N.E.2d at 1023. Dilling filed a complaint for damages alleging that Long and his affiliated trade unions (collectively, "Long") had committed theft, among other offenses. Because Dilling had placed the trash bags into a dumpster in an area that was open to public access, a panel of this court deemed the trash bags to be abandoned property in which Dilling no longer had a property right. *Long*, 705 N.E.2d at 1026. Accordingly, we concluded that the trial court had erred in denying Long's "[m]otion to dismiss and/or [m]otion for summary judgment[.]" *Id.* at 1027. Here, Champion's tires were stored in an enclosure that was typically locked, monitored by a video surveillance system, and overseen by Champion's staff. Champion's tires were not abandoned property, which Smith concedes.

[14] The crux of Smith's argument is her claim that, by stockpiling its used tires for disposal, Champion demonstrated that it regarded the used tires as trash and as having no value to Champion. We disagree. Mike Mills testified that Champion stored the used tires in an enclosure that was typically locked, labeled with a warning sign, monitored by video surveillance, and overseen by Champion's personnel. Mills testified further that Champion had a company policy that was specifically aimed at preventing unauthorized reuse of the used tires, because reuse of "unsafe [tires that] shouldn't be used anymore" puts Champion at risk of "tremendous liability[.]" Tr. Vol. II pp. 59, 64. The threat of unauthorized sale of used tires is a liability to Champion. The fact that these used tires could be sold by an unauthorized seller, and that they were taken

without permission, points to the logical inference that the tires retain some value after they are removed from vehicles.

[15] In light of Mills' testimony and reasonable inferences that can be drawn therefrom, we cannot say that "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Love*, 73 N.E.3d at 696. We regard Smith's argument that the used tires were "not property capable of being stolen" as an invitation that we should reweigh the evidence, which we cannot do. *See Gibson*, 51 N.E.3d at 210. The State presented sufficient evidence that the used tires were items of value to Champion. The State also presented sufficient evidence from which a reasonable factfinder could find that Smith knowingly or intentionally, and with the intent to deprive Champion of their value or use, exerted unauthorized control over used tires that Champion – as a prophylactic measure – stored on its premises until the used tires could be disposed of properly.

## Conclusion

[16] The State presented sufficient evidence for the jury to convict Smith of theft, a Class A misdemeanor, which conviction was elevated to a Level 6 felony because Smith had a prior, unrelated conviction for theft. We affirm.

[17] Affirmed.

[18] Baker, J., and May, J., concur.