**BEAZER HOMES INDIANA, LLP f/k/a Crossman Communities Partnership, Appellant–Defendant,**

v.

**CARRIAGE COURTS HOMEOWNERS ASSOCIATION, INC., Appellee–Plaintiff.**

No. 49A05–0808–CV–454.

Court of Appeals of Indiana.

April 28, 2009.

Rehearing Denied June 26, 2009.

Andrew J. Detherage, Mark J. Crandley, Monica R. Brownewell Smith, Barnes & Thornburg LLP, Indianapolis, IN, Attorneys for Appellant.

Stephen R. Buschmann, Laura B. Conway, Thrasher Buschmann Griffith & Voelkel, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Chief Judge.

Here, we must determine when a lot becomes a lot for the purpose of assessing homeowner assessment fees pursuant to the contract between the parties. Under the facts of this case, a lot becomes a lot upon the filing of the final plat.

Appellant-defendant Beazer Homes Indiana, LLP f/k/a Crossman Communities Partnership (Beazer), appeals the entry of partial summary judgment in favor of appellee-plaintiff Carriage Courts Homeowners Association, Inc. (the Association), arguing that the plain language of the parties' contract requires the entry of partial summary judgment in Beazer's favor. Finding that the trial court erroneously interpreted the contract as a matter of law, we reverse and remand with instructions to enter partial summary judgment in Beazer's favor and for further proceedings.

### FACTS

In 1998, Beazer's predecessor in interest began work on a subdivision known as Carriage Courts. The relative rights and responsibilities of Beazer, home purchas-

ers, and the Association are set forth in the Declaration of Covenants, Conditions, Restrictions, and Easements (the Declaration), which is the controlling contract governing the parties' obligations with respect to the Carriage Courts development.

The Declaration provides that any owner of property in the subdivision—including Beazer before a parcel of property is sold to a homeowner—will pay "assessments" to the Association. Appellant's App. p. 22. The Association uses the assessments to promote the recreation, health, safety, and welfare of the owners and residents of Carriage Courts. *Id.* at 23. The assessments are also used to purchase insurance, maintain the common areas of the subdivision, and maintain the living units. *Id.*

A property owner must pay assessments for any "Lots" it owns within the subdivision, and the obligation to pay the assessments does not begin until "the first day of the month following the month of recording of the instrument by which such Lots became a part of the Property." *Id.* at 24. A "Lot" is "any plot of land shown upon any final Plat of the Property." *Id.* at 16.

Before filing final plats for the Lots in question, Beazer filed conditional final plats for the Carriage Courts subdivision. The conditional final plats were interim documents, as the location, number, and configuration of buildings depicted thereon changed after construction was complete. Beazer eventually filed final plats for all of the Lots at issue herein. Beazer calculated and paid its assessments from the time of the filing of the final plats rather than the filing of the conditional plats. In full, it paid approximately $17,000 to the Association.

On July 25, 2006, the Association filed a complaint against Beazer for breach of contract, alleging that Beazer should have calculated and paid assessments beginning with the filing of the conditional final plats. The Association argued that Beazer owed it unpaid assessments exceeding $80,000.

On August 2, 2007, the Association filed a motion for partial summary judgment, asking the trial court to find as a matter of law that the instruments that created the Lots and triggered the assessment obligation were the conditional final plats rather than the final plats. On November 2, 2007, Beazer filed a cross-motion for partial summary judgment, arguing the opposite. Following briefing and oral argument, the trial court summarily granted the Association's motion, finding that "[t]he Conditional Final Plats are the instruments that made various lots in Carriage Courts part of the Carriage Court property. . . ." *Id.* at 7. Beazer now brings this interlocutory appeal.

## DISCUSSION AND DECISION

Summary judgment is appropriate only if the pleadings and evidence considered by the trial court show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Owens Corning Fiberglass Corp. v. Cobb,* 754 N.E.2d 905, 909 (Ind.2001); *see also* Ind. Trial Rule 56(C). On a motion for summary judgment, all doubts as to the existence of material issues of fact must be resolved against the moving party. *Owens Corning,* 754 N.E.2d at 909. Additionally, all facts and reasonable inferences from those facts are construed in favor of the nonmoving party. *Id.* If there is any doubt as to what conclusion a jury could reach, then summary judgment is improper. *Id.*

The construction of terms of a written contract is a question of law that we review de novo. *Collins v. McKinney,* 871 N.E.2d 363, 372 (Ind.Ct.App.2007). The goal of contract interpretation is to

ascertain and give effect to the parties' intent. *Id.* We will determine the intent of the contracting parties by analyzing the contractual language within the four corners of the document. *Id.* If that language is unambiguous, we may not look to extrinsic evidence to expand, vary, or explain the instrument. *Ethyl Corp. v. Forcum–Lannom Assocs., Inc.,* 433 N.E.2d 1214, 1217 (Ind.Ct.App.1982). A contract is not ambiguous merely because the parties disagree as to its proper construction. *Id.*

■ Here, the Declaration provides that each owner of a Lot must pay assessments to the Association. The assessment obligation begins "on the first day of the month following the month of recording of the instrument by which such Lots became a part of the Property." Appellant's App. p. 24. "Lot" means "any plot of land shown upon any final Plat of the Property, or any part thereof, with the exception of Common Area[s]. . . ." *Id.* at 16. "Plat" is defined as follows:

> "Plat" shall mean that certain subdivision Plat or Plats of the Property as from time to time recorded in the office of the Recorder of Marion County, Indiana and all amendments and modifications thereto. It is anticipated that [Beazer] may first record a "conditional final plat" and may thereafter, following the construction of any building or buildings containing Living Units, record a

"final plat". In the event that . . . there is recorded . . . both a "conditional final plat" and, subsequently, a "final plat", then the "final plat" shall supersede and control, and the term Plat as used throughout the Declaration shall mean and refer to such subsequently recorded "final plat".

*Id.* at 17.

Thus, a property owner owes assessments as to the Lots it owns within Carriage Courts. A Lot exists once the final plat has been filed. If an earlier, interim conditional final plat was filed, that document is superseded by the final plat. We find that this language unambiguously and explicitly means that no assessments are due until a final plat is filed.

The Association focuses on the language stating that the assessment obligation begins "on the first day of the month following the month of recording of the *instrument* by which such Lots became a part of the Property." *Id.* at 24 (emphasis added). Because the Declaration does not define "instrument," the Association insists that the document is ambiguous. We disagree. As noted above, the Declaration elsewhere states explicitly that the instrument by which a Lot becomes a part of the property is a final plat. Thus, it is evident that in the context of the dispute herein, "instrument" means "final plat."[1]

---

1. Beazer explained that the Declaration included the term "instrument" rather than the more specific "final plat" because there is at least one other way in which real estate could have been added to the property:

> The Declaration also contemplated that the project might expand into adjacent real estate. It therefore included in the definition of property any "Supplemental Real Estate." . . . The Declaration therefore provides a mechanism for the addition of Supplemental Real Estate to the Property through the filing of "an instrument". . . .
>
> Under this language, Beazer could add land adjacent to the Original Real Estate

through the filing of an "instrument." The Assessment Provision contains parallel language when it refers to the "recording of the instrument by which such Lots became a part of the Property." These parallel references to an "instrument" simply reflect the fact that some "Lots" might come within the scope of the "Property" through an instrument adding "Supplemental Real Estate." They say nothing about the creation of a Lot through the filing of Final Plats—the actual matter at issue before the Court—nor do they purport to remove the

The Association also points to a hypothetical scenario in which Beazer filed only a conditional final plat for a Lot and failed to file a final plat thereafter. Under the terms of the Declaration, the Association argues, the act of filing a final plat is not required. We do not find this argument to be compelling. Whether or not Beazer is required to file a final plat, it is undisputed that Beazer *did* file a final plat for each and every Lot at issue in this litigation. And pursuant to the explicit terms of the contract, when the final plat was filed, it superseded the conditional final plats that had been filed previously. Thus, we need not and will not consider the Association's hypothetical argument.

Having reviewed the contract, we find that the language therein unambiguously states that the assessment obligation is triggered by the filing of a final plat rather than a conditional final plat. Inasmuch as the language is unambiguous, we will not examine the extrinsic evidence offered by the Association in support of its arguments. *Ethyl Corp.*, 433 N.E.2d at 1217.

The judgment of the trial court is reversed and remanded with instructions to enter partial summary judgment in Beazer's favor and for further proceedings.

MAY, J., and BARNES, J., concur.

---

"Lots" requirement from the Assessment Provision.

---

Appellant's Br. p. 12–13 (internal citations and emphasis omitted).