**FOR PUBLICATION**



ATTORNEY FOR APPELLANTS:

**STEPHEN R. PENNELL**
Stuart & Branigin, LLP
Lafayette, Indiana

ATTORNEY FOR APPELLEES:

**JEROME L. WITHERED**
Withered Burns & Persin, LLP
Lafayette, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| WHISKEY BARREL PLANTERS CO., INC., n/k/a DIGGS ENTERPRISES, INC., an INDIANA CORPORATION, ROBINSON FAMILY ENTERPRISES, LLC, an INDIANA LIMITED LIABILITY COMPANY, RALPH RICHARD ROBINSON and ANN ROBINSON, | ) ) ) ) ) ) ) | |
| Appellants, | ) ) | |
| vs. | ) ) | No.  04A03-1011-PL-582 |
| AMERICAN GARDENWORKS, INC., an INDIANA CORPORATION, and MILLENNIUM REAL ESTATE INVESTMENT, LLC., | ) ) ) ) ) | |
| Appellees. | ) | |

APPEAL FROM THE BENTON CIRCUIT COURT
The Honorable Rex W. Kepner, Judge
Cause No.  04C01-0811-PL-233

**April 16, 2012**

**OPINION – FOR PUBLICATION**

**DARDEN, Judge**

## STATEMENT OF THE CASE

Whiskey Barrel Planters Co., n/k/a Diggs Enterprises, Inc. ("Whiskey Barrel Planters"); Robinson Family Enterprises, LLC ("RFE") (collectively, "Whiskey Barrel"); Ralph Richard Robinson ("Ralph"); and Ann Robinson ("Ann") appeal the trial court's determination in favor of American GardenWorks, Inc. ("American GardenWorks") and Millenium Real Estate Investment, LLC ("MRE") (collectively, AGW").

We reverse and remand.

## ISSUES

1. Whether the trial court erred in denying Whiskey Barrel's motion for partial summary judgment on Count III of AGW's second amended complaint.

2. Whether the trial court erred in denying Whiskey Barrel's motion for partial summary judgment on Count VII of AGW's second amended complaint.

3. Whether the trial court erred in denying Whiskey Barrel's counterclaims.

4. Whether the trial court erred in determining the amount of attorney fees owed to AGW.

## FACTS

American GardenWorks is an Indiana corporation and MRE is an Indiana unlimited liability company, each with its principal place of business in Attica, Indiana. Both entities are wholly owned by Millenium Supply Company, which is owned by Gene McGowen ("McGowen") and Charles Neff.

2

Whiskey Barrel Planters was a family-owned Indiana business corporation and RFE is a limited liability corporation, each with its principal place of business in Boswell, Indiana. Ralph and Ann are the sole shareholders of Whiskey Barrel Planters and the sole members of RFE.

Until June 2008, Whiskey Barrel Planters manufactured and shipped planters and garden accessories from its Boswell, Indiana facility leased from RFE. Whiskey Barrel Planters also leased real estate located in Foresman, Indiana, from RFE. Ralph and Ann owned residential property located in Boswell, Indiana.

Whiskey Barrel had loans from Key Bank in the amount of approximately $2 million. The loans were secured by mortgages on Whiskey Barrel's business real estate and Ralph and Ann's residential property. Ralph and Ann had personally guaranteed the loans, and by the Spring of 2008, the bank began putting pressure on Ralph and Ann to secure other financing.

Because he was unable to secure additional financing, Ralph began looking for a buyer, and McGowen and Neff, acting as AGW's agents, agreed to buy Whiskey Barrel for $527,800. Although the bank was involved in the sale by putting time limitations thereon, the parties dealt at arm's length as sophisticated entities that had been in business for years. Indeed, prior to the sale, McGowen did a walkthrough inspection, and there is no evidence that he didn't see all of the property during the walkthrough. Both parties had the benefit of attorneys and accountants, and AGW's attorney drafted the "Asset Purchase Agreement (the "Agreement"). In essence, both parties leapt at the perceived benefits of the sale, with the Robinsons looking at getting rid of debt and AGW

3

acquiring assets at a discounted price. The bank approved the agreement and agreed to discharge Ralph's and Ann's personal guarantees and forgive any deficiency on the loan upon payment of the purchase amount to the bank.

The Agreement detailing the terms of AGW's acquistion of the specific assets of Whiskey Barrel was drafted and executed on June 30, 2008 by AGW's attorney, and it provided that "AGW assume[s] no debts, liabilities, or obligations incurred by [Whiskey Barrel] . . . [and Whiskey Barrel] shall indemnify and hold [AGW] harmless thereon." (App. 420). Furthermore, Recital E of the Agreement provided that "[Whiskey Barrel] desire[s] to sell and AGW desire[s] to buy substantially all of the machinery, equipment, inventory, goodwill, assets, real estate, paraphernalia and trade name of the Business, Business Real Estate, and Residence." (App. 418).

Section 1, entitled "Purchase of Assets," defined the types of assets purchased, and provided:

> [Whiskey Barrel] agrees to sell, and AGW agree[s] to purchase, the following assets of [Whiskey Barrel] . . . . :
>
> A. Business Real Estate, whose legal description is set forth in attached Exhibit A;
>
> B. Residence, whose legal description is set forth in attached Exhibit B;
>
> C. Accounts Receivable of Whiskey Barrel;
>
> D. Cash on hand/bank account(s), and any prepaid insurance, along with the right to any refunds or credits from any such prepaid insurance of Whiskey Barrel;
>
> E. Finished inventory of Whiskey Barrel;
>
> F. Raw materials inventory of Whiskey Barrel;

4

G.  The machinery, equipment, including any and all vehicles owned by Whiskey Barrel, fixtures, tools and furniture located at the locations of the Business in Boswell, Indiana and Foresman, Indiana, as set forth on the attached Exhibit C.

H.  Whiskey Barrel's rights to use the trade name Whiskey Barrel Planters, all customer lists, trade secrets, goodwill, technical product information, system documentation and other general administrative information required to operate and support the Business.

(App. 418-19).

Section 15 of the Agreement, entitled "Miscellaneous Provisions," included an integration clause (Paragraph 15(C), entitled "Entire Agreement") drafted by AGW. The integration clause provided:

> This Agreement contains the entire understanding between the parties and supersedes any prior understanding and agreements among them respecting the subject matter of this Agreement. No party shall be liable or bound to the other in any manner whatsoever by any warranties, representations or guarantees (whether expressed, implied or otherwise) except as specifically set forth herein.

(App. 425). After closing on June 30, 2008, AGW hired Ralph to continue the operation of the former Whiskey Barrel.

On November 12, 2008, AGW filed a complaint against Whiskey Barrel, alleging eight counts. The complaint was amended on January 9, 2009, with the same counts. On April 29, 2009, AGW filed a second amended complaint, alleging thirteen counts. At issue in this appeal is Count III, wherein AGW alleges that it was entitled to collect as assets the loans by Whiskey Barrel to Ralph and Ann in the amount of $327,123.00 that were not included as accounts receivable but were shown on the balance sheets and tax returns of Whiskey Barrel as "Other Current Assets." (App. 184). Also at issue is Count

5

VII, wherein AGW alleges that it was entitled to collect as assets 2008 Purdue football season tickets that were purchased by Ralph with Whiskey Barrel funds.

AGW filed fraud counts which are not the subject of this appeal but which had a bearing on the trial court's decision regarding the aforementioned Counts III and VII. AGW filed Count VIII, wherein it alleged fraud concerning certain inventory and related items recorded on Whiskey Barrel's balance sheets. AGW also filed Count X, wherein it alleged fraud in the manner in which Whiskey Barrel described certain environmental issues. AGW further filed Count XII, wherein it alleged fraud because Whiskey Barrel omitted from the list of assets attached to the Agreement--in the form of property, equipment, and vehicles listed in Exhibit C--some of the assets that Whiskey Barrel had allegedly agreed to sell to AGW.

On January 22, 2009, Whiskey Barrel filed four counterclaims. At issue in this appeal is Counterclaim Count III, wherein Whiskey Barrel alleges that AGW converted personal property belonging to Ralph and Ann by refusing to allow them on the business property to recover their personal property. Also at issue is Counterclaim Count IV, wherein Whiskey Barrel alleges that it is entitled to replevin of the converted personal property.

On June 10, 2009, Whiskey Barrel filed a motion for partial summary judgment as to, among other things, Counts III and VII. In the motion, Whiskey Barrel alleged that the second amended complaint failed as a matter of law under the parol evidence rule because the Agreement did not provide for the sale of the shareholder loans to AGW. With reference to the Count III shareholder loans, the motion stated that the complaint

6

"fails, as a matter of law, because 'loans to shareholders' was not an asset [Whiskey Barrel] sold to [AGW] pursuant to the [Agreement]." (App. 202). The accompanying brief stated that shareholder loans "were not included as an asset by Whiskey Barrel to [AGW], as demonstrated by the [Agreement] and the balance sheet [AGW] attached to their Second Amended Complaint." (App. 224-25). The brief further stated that the evidence proffered by AGW—the balance sheet of Whiskey Barrel attached to [AGW's] second amended complaint—"refutes any notion that a 'loan to a shareholder' is included as part of the 'Accounts Receivable of Whiskey Barrel' which [AGW[ acquired from [Whiskey Barrel]." (App. 225). The brief set forth further arguments that will be addressed below.

The motion for partial summary judgment also alleged that the second amended complaint failed as a matter of law because Section 1 of the Agreement did not provide for the sale of the 2008 Purdue football season tickets. The accompanying brief pointed out that the tickets were not denominated as "assets" sold pursuant to the Agreement.

AGW responded to Whiskey Barrel's motion for partial summary judgment and stated that the term "Accounts Receivable," as used in the Agreement, was ambiguous, and the term's meaning could not be determined as a matter of law. Thus, AGW alleged that the court could look outside the four corners of the Agreement to ascertain whether shareholder loans could be included as one of the "Accounts Receivable" that it purchased. AGW also responded that it was impossible to conclude, as a matter of law, that the 2008 Purdue football season tickets were not assets sold by Whiskey Barrel to

7

AGW under the Agreement. In support of its response on both counts, AGW designated

McGowen's affidavit, in which he opined:

> It was the intention of both parties in executing the [Agreement] and completing the transaction that [AGW, as purchaser, was] buying all of the assets owned by [Whiskey Barrel], as [seller]. This included the shareholder loan, listed on the May 2008 balance sheet of [Whiskey Barrel], attached to [AGW's] Second Amended Complaint as Exhibit 3, and the season tickets for Purdue football, which are owned by and were ordered by Whiskey Barrel and were sent to Whiskey Barrel's Boswell address. After examining the books of [Whiskey Barrel], I confirmed that Whiskey Barrel had purchased the football tickets, and therefore such tickets were an asset of the company as of June 30, 2008.

(App. 262). On January 21, 2010, the trial court denied Whiskey Barrel's motion for

partial summary judgment.

On May 10-12, 2010, a trial was held on AGW's second amended complaint and

Whiskey Barrel's counterclaims. At the trial, the trial court admitted evidence pertaining

to AGW's fraud claims as an exception to the parol evidence rule. The trial court issued

extensive findings of fact and conclusions of law in which it held for Whiskey Barrel on

AGW's Counts VIII and X fraud claims and for AGW on its Count XII fraud claim.

On the Count III loans to shareholders claims, the trial court held for AGW. The

trial court made the following findings in support of its judgment on this count:

> 222. The Whiskey Barrel balance sheets and tax returns include an entry noted "Loans to Shareholders."
>
> 223. The balance of the loan to shareholders was $327,123.20.
>
> 224. "Accounts Receivable" is not defined by the [Agreement], but a shareholder loan could be deemed an account receivable. In any event, the loan to shareholders was unquestionably an asset of Whiskey Barrel, and AGW acquired all of Whiskey Barrel's assets in this transaction.

8

225. The Court finds that "accounts receivable" must be broadly construed to reflect the parties' understanding, and that when AGW acquired all the assets of Whiskey Barrel, they acquired the right to collect the shareholder loan from [Ralph and Ann].

(App. 46) (citations to exhibits omitted). The trial court's findings are based, in large part, upon the evidence admitted pursuant to the fraud counts under the fraud exception to the parol evidence rule.

The trial court also held for AGW on its Count VII theft claims involving the 2008 Purdue football season tickets. In so doing, the trial court recognized that the Agreement did not identify the tickets as an asset to be sold. The court found that "the [A]greement of the parties was that *all of the assets* of Whiskey Barrel were to be sold and that the football tickets were an asset of Whiskey Barrel." (App. 24). (Emphasis added). The trial court's finding is based upon the evidence admitted pursuant to the fraud claims under the fraud exception to the parol evidence rule.

The trial court held for AGW on Whiskey Barrel's counterclaims. In so doing, the trial court made the following findings:

229. Counts III and IV of the Counterclaim concerned personal property which [Ralph and Ann] claim is theirs and did not go with the sale to AGW, and which are held in rooms at the Boswell production facility.

230. The Court finds that the parties made a deal for sale of all assets that were located on and inside the Whiskey Barrel facility at Boswell.

231. The Court notes that [Ralph and Ann] did not move any of the claimed items before the June 30, 2008 closing, or during the six weeks that [Ralph] worked for [American GardenWorks] after the closing, or even on September 25,

9

2008, when [Ralph and Ann] picked up numerous items from AGW's facility.

232. The Court finds that the items of personal property claimed by the [Ralph and Ann] in their Counterclaim passed to AGW as part of the sale, and that in any event, [Ralph and Ann] have abandoned any claims to such property by failure to take it away before closing, to remove it during the six weeks [Ralph] worked for [American Gardenworks] after the closing, or to take it on September 25, 2008.

233. Judgment should be entered against [Whiskey Barrel] and in favor of [AGW] on [Whiskey Barrel's] Counterclaims.

(App. 47).[1]  The trial court entered judgment in favor of AGW in the amount of $409,611.24, a judgment which included a favorable ruling on AGW's claims for recovery of cash in hand, an insurance refund, a bank account, the 2008 Purdue football season tickets, and the shareholder loans.  The trial court also awarded attorney fees and costs to AGW in the amount of $24,454.04.

## DECISION

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *City of Terre Haute v. Pairsh*, 883 N.E.2d 1203, 1206 (Ind. Ct. App. 2008), *trans. denied*.  The moving party bears the burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law.  *Id*.  We review only the designated evidentiary material in the record, construing that evidence liberally in favor of the nonmoving party so as not to deny that party its day in court.  *Myers v. Irving Materials*, 780 N.E.2d 1226,

---

[1] The record shows that Ralph and Ann recovered some items of personal property from AGW on September 25, 2008.

10

1228 (Ind. Ct. App. 2003). The construction of a written contract is generally a question of law for the court, making summary judgment particularly appropriate in contract disputes. *Stewart v. TT Commercial One, LLC*, 911 N.E.2d 51, 55 (Ind. Ct. App. 2009), *trans. denied*. A contract will be found ambiguous only if reasonable persons would differ as to the meaning of its terms. *Id*. at 56. A contract is not ambiguous merely because the parties disagree as to its proper construction. *Id.*

As a general rule, interpretation of a contract presents a question of law and is reviewed *de novo*. *Trustees of Ind. Univ. v. Cohen*, 910 N.E.2d 251, 257 (Ind. Ct. App. 2009). A court should determine the intent of the contracting parties by analyzing the contractual language within the four corners of the document. *Id*. Clear, plain, and unambiguous terms are conclusive of that intent. *Id.* The primary goal of contract interpretation is to ascertain and give effect to the intention of the parties as reasonably manifested by the language of the four corners of the agreement. *Beazer Homes Ind., LLP v. Carriage Courts Homeowners Assoc.*, 905 N.E.2d 20, 22-23 (Ind. Ct. App. 2009), *trans. denied*. Neither a trial nor an appellate court should construe clear and unambiguous provisions, and neither court should add provisions not agreed upon by the parties. *Id*. at 23. The power to interpret contracts does not extend to changing its terms. *Knight v. Ind. Ins. Co.*, 871 N.E.2d 357, 361 (Ind. Ct. App. 2007). A court determines the meaning of a contract from examination of all of its provisions, without giving special emphasis to any word, phrase, or paragraph. *Simon Property Group v. Michigan Sporting Goods Distribs., Inc.*, 837 N.E.2d 1058, 1070 (Ind. Ct. App. 2005), *trans. denied*.

11

If the language of a contract is unambiguous, the court may not look to extrinsic evidence to expand, vary, or explain the instrument. *Beazer*, 905 N.E.2d at 23. The parol evidence rule precludes a party from presenting evidence of prior or contemporaneous oral agreements or other extrinsic evidence to vary or contradict the terms of a written contract. *Sees v. Bank One, Indiana, N.A.*, 839 N.E.2d 154, 161 (Ind. 2005). Furthermore, where a contract contains an integration clause which indicates the contract is a complete, final, and accurate expression of all the parties' agreements, evidence of a prior or contemporaneous statement or negotiation cannot operate either to add to or contradict the terms of the agreement. *Hinkel v. Sataria Distrib. & Packaging, Inc*., 920 N.E.2d 766, 769 (Ind. Ct. App. 2010). Exceptions to the parol evidence rule apply when there is proof of fraud, mistake, ambiguity, illegality, duress, or undue influence. *People's Bank & Trust Co. v. Price*, 714 N.E.2d 712, 717 (Ind. Ct. App. 1999), *trans. denied*. The existence of express terms in a valid written contract precludes the substitution of any implied terms regarding the subject matter covered by the express terms. *Id*.

1.    Loans to Shareholders

Whiskey Barrel contends that the trial court erred in determining that it was not entitled to summary judgment as a matter of law on Count III of the second amended complaint. Whiskey Barrel emphasizes that AGW did not claim that there was fraud involved in the definition of assets under the Agreement. Whiskey Barrel argues that the Agreement unambiguously provides for the sale of specific assets, not for the sale of all

12

assets. It also contends that there is no ambiguity in the meaning of the term "accounts receivable" as that term is used in the Agreement drafted by AGW.

Our review of the pleadings shows that although AGW claimed that Whiskey Barrel fraudulently induced AGW to enter into certain parts of the Agreement, it did not claim that Whiskey Barrel committed fraud with regard to the shareholder loans. Accordingly, we examine the designated evidence to determine whether there is ambiguous language in the Agreement that necessitated the denial of summary judgment on this issue.

As described above, the Agreement provided for the purchase of "*substantially all* of the machinery, equipment, inventory, goodwill, assets, real estate, paraphernalia and trade name of the Business, Business Real Estate, and Residence." (App. 418) (Emphasis added). The Agreement then listed the eight specific types of assets that were to be sold, a list including "Accounts Receivable of Whiskey Barrel" but not shareholder loans. (App. 418-19). Citing Webster's New College Dictionary, p. 1126 (4th ed. 2008), AGW notes that the term "substantial" is defined as "relating to or having substance." *Id.* AGW's Br. at 11. Thus, AGW reasons that the Agreement provides for the sale of "all assets of any substance." *Id.* AGW identifies the shareholder loans as such assets.

The adjective "substantial," however, is not used in the Agreement. Instead, the Agreement notes AGW's intent to buy "substantially all" of the assets. In this context, the word "substantially" is an adverb which is used to modify the adjective "all." The statement making the reference to AGW's purchase of "substantially all" of the assets explains the parties' intent regarding the type and quantity of assets to be sold. The plain

13

and ordinary meaning of the term "substantially all" indicates "most but not all of the assets." As the drafter of the Agreement, AGW could have shown the sale of all assets by stating the sale was for "all of Whiskey Barrel's assets" or "all Whiskey Barrel assets including but not limited to the following." There is no ambiguity in this portion of the Agreement, and there is no reason to look outside the contract to extrinsic evidence.[2]

In its response to Whiskey Barrel's motion for partial summary judgment, AGW contended that the term "Accounts Receivable of Whiskey Barrel" was not defined in the four corners of the Agreement and was therefore ambiguous. AGW also contended that the term "accounts receivable" may refer to more than accounts to be paid by customers. In support of its contention, AGW cited 1 Am. Jur. 2d Accounts and Accounting § 2 (1964), which defines an "account receivable" as "the amount one person owes to another on an unsettled account. When used in a contract selling . . . such items, the term is construed according to the usual rules for the construction of contracts, taking into account the particular facts of each case." AGW also cited Black's Law Dictionary 13 (7th ed. 2000), wherein an "account receivable" is defined as "[a]n account reflecting a balance owed by a debtor; a debt owed by a customer to an enterprise for goods or services." On the other hand, Whiskey Barrel cited Barron's Dictionary of Accounting Terms 11 (2d ed. 1995) in its brief in support of its motion for the proposition that an "account receivable" means "amounts due a business on account from customers who have bought merchandise or received services." AGW reasoned that because the term

---

[2] Accordingly, there is no basis for an exception to the parol evidence rule, and the evidence designated by AGW should not have been considered by the trial court.

"account receivable" is "a term of art and it is ambiguous (since the parties have both advanced reasonably different interpretations of this term), the ambiguity cannot be resolved by the Court as a matter of law . . . Rather, the meaning of the term must be resolved by the fact-finder." (App. 250).

Even though the term "account receivable" may be ambiguous under certain circumstances, ambiguity does not support the trial court's denial of Whiskey Barrel's motion for partial summary judgment. Whiskey Barrel designated Paragraph 27 of AGW's second amended complaint, which states that the "balance sheets of Whiskey Barrel dated May, 2008, evidence $327,123.20 in loan(s) (the "Indebtedness") to the shareholders of Whiskey Barrel, who are, upon information and belief, [Ralph and Ann]. True and accurate copies of said balance sheets are attached hereto as Exhibit 3." (App. 144). Whiskey Barrel also designated Exhibit 3, which lists Account 11100, totaling $170,019.32 as "Accounts Receivable" and Account 13000, totaling $327,123.20 as "Loans to Shareholders" under the heading of "Other Current Assets." (App. 184). In response, AGW designated Paragraph 8 of McGowen's supporting affidavit, which merely alleges that "[i]t was the intention of [AGW] in executing the [Agreement] and completing the transaction that [AGW], as [purchaser was] buying all of the assets owned by [Whiskey Barrel] . . . ." (App. 262).

The balance sheet attached to the second amended complaint by AGW and designated as evidence by Whiskey Barrel is unequivocal evidence of the meaning of "Accounts Receivable of Whiskey Barrel" as that term is used by AGW in the Agreement that it drafted. The balance sheet clearly shows that the term "accounts receivable," as

15

used in the Agreement, does not include the shareholder loans (designated as "Other Current Assets, not "Accounts Receivable"). (App. 184). McGowen's unsupported claim does not rise to the level of evidence that creates a genuine issue of material fact on this issue. Accordingly, the trial court erred in denying Whiskey Barrel's motion for partial summary judgment on this issue.

2.       2008 Purdue Football Season Tickets

Whiskey Barrel contends that the trial court erred in determining that it was not entitled to summary judgment as a matter of law on Count VII of the second amended complaint. AGW responds that the 2008 Purdue football season tickets were sold under Recital E of the Agreement, which provides that "[Whiskey Barrel] desire[s] to sell and AGW desire[s] to buy substantially all of the . . . assets [and] . . . paraphernalia . . . ." (App. 418).

Recital E of the Agreement generally classified the specific types of Whiskey Barrel's possessions to be sold. Paragraph 1 then specifies the particular categories of Whiskey Barrel's possessions to be sold. This list does not include a specific reference to the 2008 Purdue football season tickets or to a category to which the tickets would apply. As we stated in our discussion of Issue 1 above, AGW, as the drafter of the Agreement, could have, but did not, draft the Recital to say that it would purchase all assets or Paragraph 1 to say that the list therein "included but was not limited to" the possessions specifically listed. The Agreement is unambiguous, and absent a claim that matches one of the exceptions to the parol evidence rule, there was no basis for the trial court to

consider extrinsic evidence. The trial court erred in denying Whiskey Barrel's motion for partial summary judgment on this issue.

3.    Ralph and Ann's Counterclaim for Conversion and Replevin of Personal Property

Ralph and Ann contend that the trial court erred in going beyond the four corners of the Agreement to decide their counterclaim for the conversion and return of personal property, including among other things, "bicycles, dune buggy, kids['] toys and clothes, [a] biofeedback computer and accessories, contents of [a] safe, and other property not listed in "Exhibit C" to the [Agreement]." (App. 102).

The trial court again looked at extrinsic evidence to determine that the AGW was entitled to these items because "the parties made a deal for sale of all assets that were located on and inside the Whiskey Barrel facility at Boswell." (App. 47). The trial court also determined that AGW was entitled to these items because Ralph and Ann had abandoned the denominated items of personal property.

As explained in our discussions of Issues 1 and 2, the Agreement is not ambiguous with reference to the types of assets that were purchased by AGW. Furthermore, the Agreement clearly states that "substantially all" assets were sold, not all assets of substance. In short, the Agreement expressly limits the assets to be sold to those listed in Paragraph 1 of the Agreement. Clearly absent from the list of assets contained in the Recital or Paragraph 1 of the Agreement, or in the exhibit attached to the Agreement, is any reference to Ralph and Ann's personal property. Accordingly, there was no exception to the parol evidence rule which allowed the trial court to look to extrinsic evidence to determine that AGW purchased all of Whiskey Barrel's and Ralph and Ann's

17

personal possessions. Therefore, the trial court erred in determining that AGW acquired Ralph and Ann's personal property under the terms of the unambiguous Agreement.

The issue of abandonment, on the other hand, is not based upon the Agreement but upon the facts and circumstances of the case. The trial court's finding and judgment will be reviewed under the "clearly erroneous" standard. *See Morton v. Ivacic*, 898 N.E.2d 1196, 1198-99 (Ind. 2008).

"Abandonment has been defined as the relinquishment of property to which a person is entitled, with no purpose of again claiming it, and without concern as to who may subsequently take possession . . . ." *Right Reason Publications v. Silva*, 691 N.E.2d 1347, 1351 (Ind. Ct. App. 1998) (quoting *Schaffner v. Benson*, 90 Ind.App. 420, 423-24, 166 N.E. 881, 883 (1929)). To constitute an abandonment of property, there must be a concurrence of the intention to abandon and an actual relinquishment. *Id*. "An intention to abandon property . . . may be inferred as a fact from the surrounding circumstances, and it can be shown by acts and conduct clearly inconsistent with any intention to retain and continue the use or ownership of the property . . . ." *Id*. (quoting 1 C.J.S. *Abandonment* § 5 (1985)). Abandonment of property divests the owners of their ownership, so as to bar them from further claim to it. *Id*.

Here, the trial court found that "[Ralph and Ann] have abandoned any claims to such property by failure to take it away before closing, to remove it during the six weeks [Ralph] worked for [American GardenWorks] after the closing, or to take it on September 25, 2008." (App. 47). This finding is insufficient to support the trial court's conclusion, however, as it fails to recognize the unchallenged evidence that AGW hired Ralph and he

18

worked at the former Whiskey Barrel until the middle or latter part of August until terminated. There is no evidence in the record that Ralph or Ann were prohibited from keeping personal property in buildings on the business property. Indeed, Ralph and Ann moved a truckload of the personal property without objection, but when they requested to finish the move of the rest of the personal property, they were denied entry onto the business property to do so. Ralph and Ann's request to move the remaining personal property is inconsistent with the requirement that there be a concurrence of the intention to abandon and an actual relinquishment. AGW clearly denied Ralph and Ann's request to retrieve their personal property under the mistaken idea that the Agreement gave it possession of the property. In short, the trial court's finding of abandonment is clearly erroneous.

The trial court erred as a matter of law in finding that Ralph and Ann's personal property passed to AGW under the terms of the Agreement. Furthermore, the trial court's finding and judgment regarding abandonment of that property are not suggested by the evidence and are clearly erroneous. Thus, Ralph and Ann are entitled to recover any personal property converted by AGW.

4. Attorney Fees

The trial court awarded $24,454.04. in attorney fees and costs to AGW on the basis of its judgment against Ralph and Ann "as to Count I, theft and conversion of cash-in-hand at closing, and Count IX, theft and conversion of the First National Bank account . . . ." (App. 52). The award was made pursuant to Indiana Code section 34-24-3-1, which provides that attorney fees and costs are recoverable when a party has suffered a

19

pecuniary loss as a result of, among other things, theft and/or conversion. Although Whiskey Barrel does not contest the trial court's judgment finding liability on the aforementioned counts, it does question the appropriateness of the amount of the attorney fee and costs award.

An award of attorney fees under Indiana Code section 34-24-3-1 is appropriately limited to "those fees incurred because of the basis underlying the award." *SJS Refractory Co. v. Empire Refractory Sales, Inc.*, 952 N.E.2d 758, 767 (Ind. Ct. App. 2011). The party requesting an award of attorney fees "bears the burden of proving an appropriate allocation of fees between the issues for which fees may be assessed and those for which they may not." *Id.* "While a perfect breakdown is neither realistic nor expected, a reasonable, good faith effort is anticipated." *Id.* We review the award of attorney fees under the statute for an abuse of discretion. *Id.* An abuse of discretion is occurs only when the result is clearly against the logic and effect of the facts and circumstances before the court. *West Cent. Conservancy Dist. v. Burdett*, 920 N.E.2d 699, 702 (Ind. Ct. App. 2010). The fact that the same circumstances might justify a different outcome does not permit the substitution of this court's judgment for that of the trial court. *Id.*

Here, AGW's counsel submitted an attorney fee affidavit, which revealed that counsel had over thirty years of experience "trying a wide variety of civil cases, jury trials and bench trials." (App. 416). Counsel stated that he and his paralegal expended 404.55 hours on the 13-count case for a total fee of $72,344.75 with litigation costs of $4,454.02. Counsel alleged:

20

There were 13 counts in Plaintiffs' Amended Complaint with some counts dealing with essentially the same issues of fact but different legal theories (for instance, 3 counts involving the vehicles—theft and conversion, breach of warranty, declaratory judgment). The discovery in the case—document exchanges, interrogatories, depositions—involved all of these issues blended together. Preparation for trial, the actual trial, and the preparation of a Post-Trial Brief and Proposed Findings of Fact and Conclusions of Law likewise involved all of these issues blended together in the presentation of evidence and argument. Because of this, it is very difficult and highly impractical to separate out the specific amounts of time devoted to Counts I and IX, the counts of the Complaint for which the Court has ruled attorney fees are recoverable. Plaintiffs and counsel therefore respectfully request that the court award attorney fees based on what a contingency fee would be.

The Court awarded the sum of $57,738.00 on Count I involving the theft and conversion of the cash-in hand at closing, and further awarded the net sum of $18,911.04 on Count IX involving the theft and conversion of the First Financial Bank account, for a total of $76,649 on those two counts of the Amended Complaint.

The undersigned counsel has litigated and tried many civil cases over the past 30 years involving hourly fees and contingent fees. A customary contingent fee for handling business litigation for cases similar to this is a 40% contingent fee if the case goes to trial. Such a contingent fee is fair and reasonable. In the opinion of the undersigned, in view of the complexity of the legal and factual issues in the case, as well as the time and skill necessary to prosecute the case to a successful conclusion, a contingent fee of 40% of the amount recovered on Counts I and IX is reasonable and appropriate. In light of the recovery of $76,649.04, such contingency fee calculates to $30,660 in attorney fees. Plaintiffs and counsel therefore respectfully request an award of $30,660 in attorney fees for Counts I and IX.

Counsel further requests the Court award an appropriate amount for recovery of Plaintiffs' litigation costs, which total $4,454.02.

(App. 417).

Ralph and Ann cite *Lumbermen's Mut. Cas. Co. v. Combs,* 873 N.E.2d 692 (Ind.

Ct. App. 2007), *trans. denied*, in support of their argument that the request for attorney

21

fees was not supported by sufficient evidence. In *Lumbermen's*, we held that "[c]ontingency fee agreements may not be used as the basis for determining the reasonable attorney[] fee to be paid by a nonparty to that fee arrangement." *Id*. at 722 (quoting *Mason v. Mason*, 561 N.E.2d 809, 811 (Ind. Ct. App. 1990)). A trial court's award of attorney fees based on a contingency fee contract is inappropriate because such arrangements are susceptible to abuse. *Id*. The party who stands to be awarded attorney fees by the trial court must be content with reasonable attorney fees based upon traditional factors. *Id*. The determination of the reasonableness of an attorney fee requires consideration of all relevant circumstances, including the attorney's experience, ability, and reputation, the nature of the employment, the responsibility involved, and the results obtained. *Id.*

While AGW's counsel requested an award based upon a contingency basis, it is clear that the trial court, as evidenced by an award that was $10,000 less than requested, did not determine its award upon a contingency basis. We note, however, that Counts I and IX--representing only $76,649 of a much larger amount in claims and only 2 of 13 counts—are relatively minor issues. Additionally, we observe that AGW's counsel did not provide the trial court with information that made it possible for the court to determine the number of the 404.5 hours worked by counsel and the number worked by his paralegal. We cannot determine from the record whether the trial court correctly exercised its discretion. Accordingly, we remand for further proceedings.[3]

---

[3] Contrary to AGW's counsel's claim, it is not highly impractical to allocate the fees in conversion cases. *See SJS*, 952 N.E.2d at 767-68.

In addition, we note that Indiana Code section 34-24-3-1(2) allows for an award of "costs of the action." AGW did not set forth the nature of its costs, and we are unable to determine whether the costs are recoverable under the statute.

CONCLUSION

The trial court erred in denying Whiskey Barrel's motion for partial summary judgment on Counts III and VII. The trial court also erred in determining that Ralph and Ann's personal property was transferred to AGW under the Agreement and that the property had been abandoned by them. Finally, the record is insufficient to determine whether the trial court properly exercised its discretion in determining the amount of the attorney fee award and costs to AGW.

Reversed and remanded for further proceedings consistent with this opinion.

BAKER, J., and BAILEY, J., concur.