## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 14 2016, 8:00 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Kelleigh I. Fagan
Bruce M. Bittner
CHURCH CHURCH HITTLE & ANTRIM
Noblesville, Indiana

Brent R. Borg
CHURCH CHURCH HITTLE & ANTRIM
Fishers, Indiana

ATTORNEYS FOR APPELLEE

John J. Moore
DONINGER TUOHY & BAILEY LLP
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Pecan Shoppe of Whitestown, Inc., <br><br> *Appellant-Plaintiff,* <br><br> v. <br><br> SJC, Inc., <br><br> *Appellee-Defendant* | January 14, 2016 <br><br> Court of Appeals Case No. 06A05-1504-PL-177 <br><br> Appeal from the Boone County Superior Court 1 <br><br> The Honorable Matthew C. Kincaid, Judge <br><br> Trial Court Cause No. 06D01-1305-PL-287 |

**Altice, Judge.**

### Case Summary

Pecan Shoppe of Whitestown, Inc. (Pecan Shoppe) appeals the trial court's entry of summary judgment in favor of SJC, Inc. (SJC) on Pecan Shoppe's claim for breach of contract. Pecan Shoppe argues that the trial court improperly determined that its complaint was filed outside the applicable statute of limitations.

We affirm.

## Facts & Procedural History

On November 11, 1999, Pecan Shoppe and SJC entered into an Asset Purchase Agreement (Purchase Agreement), whereby SJC agreed to purchase certain assets, including Pecan Shoppe's interest in a lease of real estate located at the southeast corner of I-65 and Whitestown Parkway in Zionsville (the Property). The Purchase Agreement was closed on December 1, 1999, and provided that SJC would pay Pecan Shoppe a purchase price of $850,000. In addition to the purchase price, the Purchase Agreement contained two provisions for additional consideration to be paid to Pecan Shoppe if SJC developed additional uses on the Property (Use Premiums). Specifically, Section 2.5(d) (the Second-Use Premium) of the Purchase Agreement provided:

> [SJC] shall, in addition, and only in the event that [SJC] obtains all necessary legal authority and no judicial action precludes [SJC]'s implementation of the authorized development of the Real Property for two (2) uses, pay to [Pecan Shoppe] an addition to the Purchase Price in the sum of One Hundred Fifty Thousand Dollars, with interest at the rate of Seven Percent (7%) per annum accruing from the date of approval of the second use

is final and unappealable, which addition to the Purchase price (the "Second Use Premium") shall be due and payable on the first day of the first full month following the fifth (5th) anniversary of the Closing Date.

*Appellant's Appendix* at 32. Section 2.5(e) (the Third-Use Premium) of the Contract provided:

> [SJC] shall, in addition, and only in the event that [SJC] obtains all necessary legal authority and no judicial action precludes [SJC]'s implementation of the authorized development of the Real Property for three (3) uses, or if [SJC]'s development of the Real Property renders a third use impossible, pay to [Pecan Shoppe] an addition to the Purchase Price in the sum of One Hundred Fifty Thousand Dollars, with interest at the rate of Seven Percent (7%) per annum accruing from the date that approval of the third use is final and unappealable, which addition to the Purchase Price (the "Third Use Premium") shall be due and payable on the first day of the first full month following the fifth (5th) anniversary of the Closing Date.

*Id*. at 32-33. The parties agree that January 1, 2005 was the first day of the first full month following the fifth anniversary of the closing date of the Contract.

[4]     Prior to the Purchase Agreement with SJC, Pecan Shoppe operated a gas station, a convenience store, and a restaurant out of a single-tenant building located on the Property. SJC subsequently tore down the single-tenant building and replaced it with a three-tenant building, out of which SJC operated a gas station and a convenience store. A Starbucks opened in one of the tenant spaces in July 2003. In October 2007, a single-bay drive through carwash opened in the commercial space at the end of the building opposite the

Starbucks. On January 31, 2011, a Cracker Barrel restaurant opened on vacant ground located on the Property.

[5] On May 13, 2013, Pecan Shoppe filed a complaint against SJC seeking damages for breach of contract based upon SJC's failure to pay the Use Premiums set forth in Sections 2.5(d) and (e) of the Purchase Agreement.[1] In an amended answer, SJC raised a statute of limitation defense, asserting that more than six years had passed since the Use Premiums were due and payable under the terms of the Purchase Agreement.[2] SJC filed a motion for summary judgment on December 19, 2014. Pecan Shoppe filed its response in opposition to summary judgment on January 28, 2015. The trial court held a hearing on SJC's summary judgment motion on April 10, 2015. That same day, the trial court entered a written order, including findings of fact and conclusions of law, granting summary judgment in favor of SJC. Specifically, the court found as follows:

> 39. The Purchase Agreement unambiguously provides that the use premiums were due on January 1, 2005. With this clear language as to the due date, there is no need for the Court, as Plaintiff's affidavit invites, to delve into a consideration of testimony concerning intent, other extraneous documents, or to

---

[1] In its complaint, Pecan Shoppe alleged that uses of the Property had "expanded to include the operation of a Cracker Barrel, a Starbucks, and a car wash." *Appellant's Appendix* at 59.

[2] The parties do not dispute that a six-year statute of limitation applies to the matter at hand. *See* Ind. Code § 34-11-2-9 ("[a]n action upon . . . written contracts for the payment of money executed after August 31, 1982, must be commenced within six (6) years after the cause of action accrues"). The parties dispute concerns when the cause of action, if any, accrued.

hear what some signatory to the contract *thinks* it means or now *wishes* it means.

\* \* \*

40. If Pecan Shoppes of Whitestown thought SJC breached the contractual provisions to pay the use premiums – maybe it did – the unambiguous deadline to file suit considering the six (6) year statute of limitations was January 1, 2011. Pecan Shoppes [sic] of Whitestown's Complaint was not timely filed and Plaintiff is thereby entitled to take nothing by way of its Complaint.

*Appellant's Appendix* at 9. Pecan Shoppe now appeals.

### Discussion & Decision

[6] Pecan Shoppe argues the trial court erred in concluding that the language employed in the Use Premium provisions unambiguously provided that the deadline for payment thereof was January 1, 2005.[3] Pecan Shoppes asserts that while the language of Sections 2.5(d) and (e) is not itself ambiguous, a latent ambiguity becomes evident in applying the terms of the Purchase Agreement to the circumstances herein. According to Pecan Shoppe, the uses for which it seeks payment of the Use Premiums[4] came into existence after the January 1,

---

[3] The implication of this conclusion is that the six-year statute of limitations began to run at that point in time, regardless of whether the Property had been put to a second or third use such that SJC's obligation to pay the Use Premiums was triggered.

[4] As noted in Footnote 1, *supra*, Pecan Shoppe alleged in its Complaint that the Property had been put to three additional uses, including operation of a Starbucks, a Cracker Barrel, and a car wash. In responding to SJC's motion for summary judgment, Pecan Shoppe asserted that it is not claiming that operation of the Starbucks triggered SJC's obligation to pay a Use Premium.

2005 payment deadline set forth in the Purchase Agreement. Pecan Shoppe therefore asserts that because the Purchase Agreement is silent as to a deadline for Use Payments triggered after the anniversary date, SJC's obligation to pay the Use Premiums would have been triggered when those uses, i.e., the car wash in 2007 and the Cracker Barrel in 2011, were approved and became "final and unappealable." *Id.* at 32, 33. Under Pecan Shoppe's interpretation of the Purchase Agreement, its cause of action did not accrue until SJC's obligation to pay the Use Premiums was triggered, and therefore, summary judgment was inappropriate as its Complaint was timely filed.

We review summary judgment de novo, applying the same standard as the trial court: "Drawing all reasonable inferences in favor of . . . the non-moving parties, summary judgment is appropriate 'if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Williams v. Tharp,* 914 N.E.2d 756, 761 (Ind. 2009) (quoting T.R. 56(C)). "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences." *Id.* (internal citations omitted).

The initial burden is on the summary-judgment movant to "demonstrate [ ] the absence of any genuine issue of fact as to a determinative issue," at which point the burden shifts to the non-movant to "come forward with contrary evidence" showing an issue for the trier of fact. *Id.* at 761-62 (internal quotation marks

and substitution omitted). And "[a]lthough the non-moving party has the burden on appeal of persuading us that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that he was not improperly denied his day in court." *McSwane v. Bloomington Hosp. & Healthcare Sys.,* 916 N.E.2d 906, 909-10 (Ind. 2009) (internal quotation marks omitted).

[9] The goal of contract interpretation is to determine the intent of the parties when the agreement was made. *Citimortgage, Inc. v. Barabas*, 975 N.E.2d 805, 813 (Ind. 2012). To the extent that this case requires that we interpret the terms of the Purchase Agreement, we note that "[i]nterpretation of a contract is a pure question of law and is reviewed de novo." *Cmty. Anesthesia & Pain Treatment, L.L.C. v. St. Mary Med. Ctr., Inc.*, 26 N.E.3d 70, 76 (Ind. Ct. App. 2015) (citation omitted). "If a contract's terms are clear and unambiguous, courts must give those terms their clear and ordinary meaning." *Id.* "'We will make all attempts to construe the language of a contract so as not to render any words, phrases, or terms ineffective or meaningless.'" *Id.* (quoting *Rogers v. Lockard*, 767 N.E.2d 982, 992 (Ind. Ct. App. 2002)).

[10] "A contract is ambiguous if a reasonable person would find the contract subject to more than one interpretation." *Citimortgage*, 975 N.E.2d at 813; *see also Tender Loving Care Mgmt., Inc. v. Sherls*, 14 N.E.3d 67, 72 (Ind. Ct. App. 2014). "When a contract's terms are ambiguous or uncertain and its interpretation requires extrinsic evidence, its construction is a matter for the factfinder." *Cmty. Anesthesia & Pain Treatment*, 26 N.E.3d at 76-7. "An ambiguous contract

will be construed against the party who drafted it." *Id*. at 77. If the language is unambiguous, however, we may not look to extrinsic evidence to expand, vary, or explain the instrument but must determine the parties' intent from the four corners of the instrument." *Id*. "A contract is not ambiguous merely because the parties disagree as to its proper construction." *Beazer Homes Ind., LLP v. Carriage Courts Homeowners Ass'n, Inc.*, 905 N.E.2d 20, 23 (Ind. Ct. App. 2009), *trans. denied*.

[11] As noted above, Pecan Shoppe concedes that in and of itself the language of Sections 2.5(d) and (e) "does not create an ambiguity." *Appellant's Brief* at 7. Pecan Shoppe nevertheless asserts that a latent ambiguity[5] becomes evident when the language setting out the Use Premiums is applied to the circumstances herein. Specifically, Pecan Shoppe notes that Sections 2.5(d) and (e) are silent as to payment of Use Premiums for uses that arise after the fifth anniversary and characterizes this silence as a latent ambiguity. In further support of its position, Pecan Shoppe designated evidence in opposition to summary judgment suggesting the parties contemplated payment of Use Premiums even if the uses triggering such payment obligation came into being after the fifth anniversary. Such extrinsic evidence may be considered only if

---

[5] Ambiguity in a contract may be one of two types: patent or latent. A patent ambiguity is "'apparent on the face of the instrument and arises from an inconsistency or inherent uncertainty of language used so that it either conveys no definite meaning or a confused meaning.'" *Simon Prop. Group, L.P. v. Mich. Sporting Goods Distrib., Inc.*, 837 N.E.2d 1058, 1070-71 (Ind. Ct. App. 2005) (quoting *Oxford Fin. Group, Ltd. v. Evans*, 795 N.E.2d 1135, 1143 (Ind. Ct. App. 2003)), *trans. denied*. A latent ambiguity "'arises only upon attempting to implement the contract.'" *Id*. at 1071 (quoting *Oxford Fin. Group*, 795 N.E.2d at 1144).

the Purchase Agreement is deemed to have a latent ambiguity. *See Simon Prop. Group*, 837 N.E.2d at 1071.

[12] We disagree with Pecan Shoppe's interpretation of the Purchase Agreement. First, the Purchase Agreement clearly sets out that the Use Premiums "shall be due and payable on the first day of the first full month following the fifth (5th) anniversary of the Closing Date." *Appellant's Appendix* at 32, 33. Finding this provision to be unambiguous as to the deadline for payment of the Use Premiums, we need only look within the four corners of the instrument and are not at liberty to consider extrinsic evidence. *See Simon Prop. Group*, 837 N.E.2d at 1071. There is nothing in the Purchase Agreement that provides for payment of Use Premiums after the five-year anniversary of the closing date.

[13] Second, Pecan Shoppe's interpretation would require this court to interpret the Purchase Agreement so as to provide for an open-ended and undefined date on which the second and third Use Premiums were due and payable. We reject Pecan Shoppe's suggestion that we need only impose a reasonable time for performance. In *Harrison v. Thomas*, 761 N.E.2d 816 (Ind. 2002), relied upon by Pecan Shoppe, the Court concluded that a contract provision setting the time for closing on a real estate contract was unambiguous. In responding to a contrary argument, the court noted that "[w]hen the parties to an agreement *do not* fix a concrete time for performance, the law implies a reasonable time." *Id.* at 819 (emphasis supplied). Here, the parties did set a fixed deadline for the payment of the Use Premiums. There is therefore no need to imply a reasonable time limit for the payment of the Use Premiums.

Having concluded that the Purchase Agreement clearly and unambiguously provides that the Use Premiums were due and payable on January 1, 2005, it follows that Pecan Shoppe's cause of action accrued and the statute of limitations began to run on that date. The limitations period for Pecan Shoppe to bring a claim against SJC for the payment of the Use Premiums expired on or about January 1, 2011. Pecan Shoppe waited more than two years after the limitations period expired before it pursued its claim for breach of contract. Accordingly, Pecan Shoppe's complaint was untimely. The trial court properly granted summary judgment in favor of SJC.

Judgment affirmed.

Riley, J., and Brown, J., concur.